ELMER N. MATTSON AND ANOTHER v. O. H. GREIFENDORF AND ANOTHER.[1]

June 26, 1931.

No. 28,458.

[1]Reported in 237 N. W. 588.

*Morphy, Bradford, Cummins & Cummins* and *Robert Barry,* for appellants.

*Frank J. Danz* and *McMeekin & Quinn,* for respondents.

HILTON, J.

This, an unlawful detainer action, was tried to a jury in municipal court on appeal from justice court. At the close of the evidence the court directed a verdict in favor of defendants, O. H. Greifendorf and Anna Greifendorf, husband and wife. The appeal is from the judgment entered on such verdict.

Defendants purchased an acre of land from the plaintiffs on contract April 21, 1928. The purchase price was $1,312.17, to be paid in monthly instalments of $15 commencing on May 1, 1928, with interest on unpaid balances at the rate of five per cent per annum, each $15 payment to be applied first on the interest and the balance on the principal. Defendants also agreed to pay the taxes levied and assessed subsequent to the year 1927. In other words they were to pay the taxes assessed in 1928 before June 1, 1929. No claim is made of nonpayment of the monthly payments.

The one acre sold was part of a five-acre tract owned by plaintiffs. The five-acre tract was carried on the tax records of the county as a single tract, and the one acre purchased by defendants had not been separately assessed or taxed. Defendants soon after the purchase built a dwelling house on the one acre and have since lived there.

Defendants paid the registration tax, and the contract was recorded in the office of the register of deeds. On May 20, 1929, defendant Anna went to the offices of the county auditor and county treasurer and inquired about and was prepared to pay the taxes; she was informed that a statement thereof would be mailed to her. However the statement sent was of the taxes on the entire five-acre tract. Before the taxes could be paid on the one acre it was neces-

sary that a division or apportionment of the taxes be made. Negotiations were had with the county officers for that purpose, and an apportionment was made July 17, 1929. Defendants paid the taxes on their tract on July 19, 1929. They also paid five per cent penalty, but this was later refunded by order of the state tax commission.

In the meantime, on June 22, 1929, plaintiffs served on the defendants a notice of cancelation of their contract on the ground of defendants' failure to pay the taxes before June 1, claiming a default on that account under the terms of the contract. The notice required defendants to pay the taxes within 30 days from the date of service of the notice and to pay the costs of such service. The sheriff's fees for serving the notice were $2.90 and have not been paid. After filing in the office of the register of deeds the notice of cancelation, proof of service thereof, and proof of nonpayment of the $2.90 sheriff's fees, plaintiffs brought this action under the unlawful detainer statute to eject the defendants from the one-acre premises.

The verdict returned and the judgment here appealed from are to the effect that there was no such default in the payment of the taxes as to justify the cancelation of the contract. All that plaintiffs now claim is the failure to pay the $2.90 sheriff's fees. Defendants had made the necessary part payments for more than a year, were in possession of the land, and had made valuable improvements thereon. Plaintiffs did not appear to have been concerned with the payment of their own taxes. They permitted the taxes upon the entire tract to become delinquent. Apparently they took the position that the duty of having the land separated for tax purposes so as to apportion the taxes rested wholly upon the defendants. In this they are mistaken. It was at least, if not more, as much the duty of plaintiffs to have the four acres set off for taxes from the one-acre tract as it was defendants' duty to have their land set off.

Defendants could not pay the taxes without paying plaintiffs' taxes on the balance of the tract until there was such a division

and apportionment. As early as May 20 defendants sought a tax statement and were ready to pay. Their efforts were unsuccessful until July 19, when payment was made. We hold that on June 22, when the notice of cancelation was served, there was no such default as to justify notice of or cancelation of the contract. Defendants' total taxes finally ascertained were $9.94, only one-half of which needed to be paid before June 1.

As far as the plaintiffs are concerned, this is an action at law and not a suit in equity. This court however is not required to disregard the equities of the case. The statutory proceeding for canceling the land contract is in the nature of a strict foreclosure. Nolan v. Greeley, 150 Minn. 441, 185 N. W. 647. If there was no default or if the trifling default here in question occurred under such circumstances that defendants were not to blame therefor, then there was no ground for canceling the contract.

In Follingstad v. Syverson, 160 Minn. 307, 308, 200 N. W. 90, 91, litigation was pending to settle the amount to be paid under a contract; the action was by the purchaser to have damages for a claimed fraud applied in reduction of the purchase price. It was held that pending good faith efforts to settle the matter of that amount the vendor could not arbitrarily cancel the contract by notice. "Particularly is that true in a case where the vendee is ready to pay the balance of the purchase price as soon as its amount is determined." In the present case there was no litigation pending, but the vendees were in good faith seeking to have the amount of the taxes determined and were ready to pay as soon as the amount was determined.

In the case just cited the court further says [160 Minn. 312]:

"The contract and statutory provisions are intended to enforce payment of whatever remains due, but until that is 'legally ascertained, if reasonably in doubt, there could be no just or conscionable ground by which it could be permitted to operate.'" The decision quotes from Lehigh Valley Coal Co. v. Searle, 248 Pa. 385, 393, 94 A. 74, 77: "Equity will not permit a party to a contract to enforce it by means manifestly never intended and such as are clearly harsh and oppressive."

584

It was not the intention of our legislature to cause the forfeiture of valuable property under circumstances here discussed. There was no real default at the time the notice of cancelation was served and no justification for the attempted cancelation.

We find no error in the admission of evidence. The court's direction of the verdict was right on the facts here shown, and its reasons, if any were given for so directing the verdict, are not now important.

Judgment affirmed.

