## ADDISON MILLER, INC. v. AMERICAN CENTRAL INSURANCE COMPANY AND OTHERS.[1]

June 23, 1933.

Nos. 29,433, 29,434, 29,435, 29,436, 29,437.

*George H. Spear,* for appellants.

*Lewis, Hunt & Palmer* and *Michael S. Bright,* for respondent.

[1]Reported in 249 N. W. 795.

*STONE, Justice.*

Five actions on as many fire insurance policies were tried together. After verdict for plaintiff, defendants, the insurers, appeal from orders denying their motions for judgment notwithstanding or a new trial. The five appeals have been consolidated here.

Plaintiff, together with the Minneapolis, St. Paul & Sault Ste. Marie Railway Company, were insured jointly under what have been designated as five "dock" and two "yard" policies on a yard and dock property on the harbor at Superior, Wisconsin. The property was partially destroyed by fire September 19, 1930, while the policies were in force. The five instant cases are on the "dock" policies.

There was some delay in submission of proofs of loss. Negotiations for a settlement on those submitted by plaintiff began in a definite way in November, 1930. From the start the adjusters for the insurers denied that the policies covered a scow and derrick leased to plaintiff. That position they maintained to the end. Negotiations were protracted. The initial demand of plaintiff was for almost $200,000, the first offer of defendants only $73,000. There was enough yielding on both sides so that finally it was agreed that defendants should pay, and plaintiff should accept, $98,239.19. The matter was closed, releases given, and the money paid by defendants in January, 1931.

The issue is whether the loss on scow and derrick, which the verdict fixed at $13,000, was included, and the insurers' liability therefor, if any, discharged by the settlement. Erroneously it was submitted to the jury as one of fact. The transaction was so integrated and evidenced by written documents of plain meaning that no fact issue remains.

The agreement of settlement apparently was reached January 13, 1931. The next day the adjuster for defendants wrote to Mr. Supornick, representing plaintiff, a letter reading in part as follows:

"In accordance with the understanding had with you over the phone on the late afternoon of the 13th, we are attaching hereto compromise agreements showing disposition of this loss in the sum of $98,239.19.

"The individual compromise agreements indicate the amount of recovery under each policy, in addition to which there are two compromise agreements in the sum of $1.00 each to be executed by both assureds under the policies covering property in the yard and it is expressly understood that the policies in each and all cases are to be surrendered without refund of premium when the drafts of the respective companies are forwarded in payment of their proportion of this agreed sum.

"Confirming that which has already been told to you, as well as to the assureds, the policies covering upon the dock are not broad enough in terms for me as adjuster, to recognize the Addison Miller Company's claim for loss sustained to the derrick and the scow which was destroyed, and you will recall that liability for both of these items was denied in the presence of both assureds."

■ Each of the compromise agreements, there being one for each insurer, executed by both plaintiff and the Soo Line, after referring to the policy by number, fixed the sound value of the insured property "and the amount of loss and damage to said property by fire which occurred on the 19th day of September, 1930." There was no exception of scow and derrick or other property. Both sound value and loss were thereby "agreed upon between the undersigned assured" and the insurer, the latter's proportion of the total ($98,239.19) being fixed in each instance. Each release concluded, in substance, thus:

"and the assured in consideration of said ascertainment of the amount of said loss and damage, hereby agrees to accept" the stated amount "in full settlement and satisfaction of all claims of whatsoever nature or kind under said policy, by reason of said fire and surrender of policy without refund of premium."

It is strange that if plaintiff had at the time considered that it was retaining any claim for further consideration or action it would have signed releases "of all claims of whatsoever nature or kind" under any of the policies; stranger still that it would have surrendered the contracts which were the basis of such claim, if any.

Contemporaneously with the signing of the releases the loss drafts were delivered, payable to the insureds jointly. In substance they are identical except as to amounts. Each recited that the sum for which it was drawn was "in full payment and satisfaction of all claims and demands for loss and damage that occurred on September 19, 1930," under the drawer's policy, the number being given in each draft. Further, each draft recites that the policy "is hereby cancelled and surrendered." A significant detail is that each was drawn on a form contemplating the alternative between a payment resulting in cancelation and surrender of the policy and one leaving it in force at a reduced amount. In some of the drafts the printed form made provision for the alternative by printing the words "reduced in said amount" directly over the words "cancelled and surrendered." In each of several drafts on that form the words "reduced in said amount" were stricken, making the instrument read, "said policy is hereby cancelled and surrendered." It is thus plain, without going beyond the drafts, that the intention was to dispose of the entire loss, leaving no single item thereof for further adjustment and another payment. Equally plain it is that neither of the insureds then contemplated that there was reserved from the settlement, as an end of the whole matter, any item of loss or damage. Had they done so they would not have accepted the drafts in the form just indicated. Even if the drafts are not to be construed with the releases, because executed simultaneously therewith and as a part of the same transaction, they do show that the parties, all of them, then construed the releases and payments as disposing of the whole matter. That is important only as it confirms the interpretation compelled by the language of the releases themselves, that the sum paid was paid by the insurers, and accepted by plaintiff, in liquidation and settlement of the whole loss, without exception or reservation of any kind.

The provision in the releases and drafts for a surrender of the policies, and the fact that they were surrendered by the two insureds for cancelation, of itself comes near being determinative against plaintiff, in the absence of any express reservation of the

claim for loss on scow and derrick. Simons v. American Legion of Honor, 178 N. Y. 263, 70 N. E. 776; King v. Aetna Ins. Co. 36 Mo. App. 128; Celi v. Pennsylvania F. Ins. Co. 269 Mass. 225, 168 N. E. 741. Where there is dispute and no fraud or mistake, the acceptance and cashing of loss drafts, expressly given in full and complete settlement of all claims, is always taken to evidence a compromise and settlement or accord and satisfaction, whatever the subject matter of the claim settled. Abrams v. Underwriters at Lloyd's, 170 Minn. 172, 212 N. W. 189; Markham Shingle Co. v. Royal Ins. Co. 106 Wash. 309, 179 P. 799; New York L. Ins. Co. v. MacDonald, 62 Colo. 67, 160 P. 193; 1 Dunnell, Minn. Dig. (2 ed. & Supp.) § 42; annotations, 34 A. L. R. 1035; 75 A. L. R. 905.

For plaintiff there is no aid in the letter of January 14, 1931, written by the adjuster for defendants to Mr. Supornick, the adjuster for plaintiff. It puts beyond doubt the admitted fact that from the start defendants denied that the policies covered the scow and derrick and that they were not allowing anything whatsoever in the settlement for that item. But it makes equally plain the intention that the object of the settlement was the "disposition of this loss." The sum fixed, $98,239.19, was the whole "amount of recovery," except for the nominal sums next referred to in connection with the "property in the yard." It demanded "that the policies in each and all of the cases are to be surrendered." There is no suggestion here that the effect of the settlement, as a discharge of the contract liability of defendants, was to be in any way limited by the exclusion of any single item of loss, large or small.

Under date of May 16, 1931, plaintiff procured from one of the gentlemen who had acted as an adjuster for defendants in bringing about the settlement a letter much stressed in argument. Plaintiff made telegraphic request for the letter on the ground that it was needed to aid them in litigation then pending. Unless we have overlooked something, there is nothing in the record even to indicate that the writer had authority at that time to speak for or otherwise represent any of the defendants. But that aside, and assuming the competency of the letter for any purpose other than

the impeachment of the testimony of the writer, it does not show that the settlement was not intended to do what the documents effecting it said it was to do, that is, dispose of all claims of whatsoever nature arising under the policies. It does reiterate that the scow and derrick "were not included in the adjustment for the reason that the policies covering upon the dock were not considered broad enough in terms for us as adjusters to recognize any claim on these items." That assertion needs no corroborative proof. It is admitted by everyone, but for obvious reasons it in no wise cuts down the effect of the settlement, which followed the adjustment, as a discharge of defendants as insurers from all liability under the policies.

■ "A demand is not liquidated, even if it appears that something is due, unless it appears how much is due; and when it is admitted that one of two specific sums is due, but there is a genuine dispute as to which is the proper amount, the demand is regarded as unliquidated, within the meaning of that term as applied to the subject of accord and satisfaction." Nassoiy v. Tomlinson, 148 N. Y. 326, 330, 42 N. E. 715, 716, 51 A. S. R. 695.

That is this case. At the outset a substantial amount was admittedly due from defendants to plaintiff and its coinsured. But that sum was not liquidated. There was controversy, and nothing suggests otherwise than that it was in good faith as to the amount of the loss on the items admittedly covered by the policies. The policies covered fixtures, equipment, tools, supplies, and other goods of one kind and another. The exhibits suggest that there were differences of opinion at the outset which had to be adjusted, and were as matter of negotiation concerning the quantity and value of material on the dock to which the fire was confined. The percentage of salvage involved many questions concerning the recutting of damaged timber so as to make it more readily marketable. Such things as the value of chutes or ore pockets on a large dock which is being dismantled are a fruitful subject of controversy when it comes to determining their sound value and the loss thereof under fire insurance policies. The subject matter fairly bristles with pos-

sibilities for disagreement and resulting compromise, and the record and argument confirm the inference that they bore their usual fruit in this case. In addition to all ·else, there was the controversy whether the rented scow and derrick were covered. Defendants, insisting that they were not, maintained that position to the end, and the settlement was on that basis.

The case is the same as that we shall suppose of a matured promissory note, given by the maker to cover the purchase price of three large items of merchandise. When demand for payment is made, the maker admits liability for a substantial amount but says that as to items one and two he is not liable for the full price because of breach of warranty or some other honest claim. As to item three he says the goods were worthless, and he will not pay anything on account of them. He makes an offer of what he considers the fair value of items one and two, tells the payee that he will not pay more, and that if that offer is accepted the note must be surrendered and the whole thing settled. The payee accepts the offer, gets the money, and surrenders the note. Certainly, thereafter he cannot recover because the settlement intentionally allowed nothing for item three. That is precisely this case in principle.

Plaintiff suffered but one loss. Its unitary character is in no wise lessened because the result was as many causes of action as there were insurers. Against each insurer there was but one cause of action or demand, although the total consisted of as many items as there were items of insured property damaged or destroyed. The claim was treated as a unit in negotiations for an adjustment and settlement, and it was so disposed of by the compromising agreements or releases. A single sum was agreed upon and paid to dispose of the whole matter.

The settlement here involved was just as plainly the "acceptance of a smaller sum  *  *  *  in full settlement of all claims under the policy," and just as clearly in discharge of all such claims without exception or reservation, as that dealt with in Abrams v. Underwriters at Lloyd's, 170 Minn. 172, 212 N. W. 189. A parallel case is Silvander v. Ploc, 42 S. D. 539, 541, 176 N. W. 516. There a

debtor sent a draft to his creditor "to settle everything" pending between them. The letter explained that "how he arrives at the figures is given below." There was appended a tabulated statement showing the debtor's calculation. It ignored, or in any event did not include, certain claims of the creditor, for which he sued later. He was barred of recovery because the court held that the settlement, as so plainly intended, was "to settle everything." Just as obviously in the instant cases the settlement was intended "to settle everything" in the way of a claim under the policies.

The cases cited for respondent are all distinguishable. For example, in Thompson Yards, Inc. v. Jastrow, 163 Minn. 329, 203 N. W. 960, there was nothing in dispute and so no subject matter for accord and satisfaction. See also Bashaw Bros. Co. v. City Market Co. 187 Minn. 548, 246 N. W. 358. In Held v. Keller, 135 Minn. 192, 197, 160 N. W. 487, 490, the receipt in full "of all claims and demands" was held not to conclude the parties "as to a claim which affirmatively appears not to have been included in the settlement negotiations." Here plaintiff's present claim was distinctly included in the sweep of the settlement, although nothing was allowed for it in the sum finally paid. In Fire Ins. Assn. Ltd. v. Wickham, 141 U. S. 564, 566, 12 S. Ct. 84, 85, 35 L. ed. 860, there was an agreement of adjustment in writing which on its face was expressly reserved so as not to "apply to or cover any question that may arise for saving boat and cargo." Concurrently with the submission of proofs under the agreement, the insurers were advised that the assured would make the "further claims" he did make and upon which he recovered. Of course such claims were so clearly and expressly reserved from the legal effect of the settlement that no other holding could have been reached. In Edwards v. Svea F. & L. Ins. Co. Ltd. 141 Minn. 285, 170 N. W. 206, the claim of accord and satisfaction was an afterthought. That defense had not even been pleaded. The item of loss, the relinquishment of which was claimed on appeal to have amounted to a compromise and settlement of the whole, was both liquidated and beyond controversy. Hence there was nothing which could have been the subject of either accord and satisfaction or compromise and settlement.

The question is, as it is in the construction of any other written contract: What was the intention of the parties? If the contract expresses it clearly, that ends inquiry unless there is present some factor other than the mere meaning of words. The issue in Tupper v. Massachusetts B. & I. Co. 156 Minn. 65, 194 N. W. 99, 101, was whether a claim for double liability for accidental death had been settled when the admitted liability for single indemnity was paid. Neither party had any knowledge of the existence of the claim for double liability; so, said Judge Lees [156 Minn. 70]:

"No intention to release it could be imputed to plaintiff because she did not know of its existence, and, conversely, defendant did not intend to exact a release of the present claim because it was equally ignorant of its existence."

The written record left by the parties of their negotiations in the instant case, and the termination thereof, show that on both sides the full physical extent of the loss and the whole coverage of the policies were under consideration.

There is no basis here for the claim that a smaller sum was paid in attempted discharge of a larger liquidated and undisputed amount. So it is sheer waste of time to consider any cases applying that rule. Equally futile is it, plaintiff's policies having been surrendered and canceled with the intention of discharging liability through compromise and settlement, to consider cases dealing with the insurer's ex parte cancelation of a policy and the effect thereof upon the right to recover for a subsequent loss, no question of compromise and settlement being involved.

■ The presence of consideration to support the compromise, as a discharge of all liability, is manifest. Consideration for a promise may consist of an act other than a promise. Am. Law Inst. Restatement, Contracts, § 75. Of course any "act or forbearance required by a legal duty that is neither doubtful nor the subject of honest and reasonable dispute, if the duty is owed" to the promisor, is not consideration. Id. § 76. But here the sum due and requisite to dispose of the whole loss was the subject "of honest and reasonable dispute." In consequence, its liquidation by the accord and

its payment in satisfaction were acts of defendants, promisees in the releases, which obviously made valuable consideration for the promise of the insureds as releasors. "The compromise of a disputed or doubtful claim is in itself a good consideration." Demars v. Musser-Sauntry L. L. & M. Co. 37 Minn. 418, 419, 35 N. W. 1; Sunset O. L. Co. v. Sherman N. Co. 121 Minn. 5, 140 N. W. 112; 1 Dunnell, Minn. Dig. (2 ed. & Supp.) §§ 40, 1520; 1 Williston, Contracts, §§ 128, 129, 135; 12 C. J. 324. The act of liquidating and paying a claim, resting in honest controversy as to amount, made a consideration, the value and legal adequacy of which are beyond question.

The orders must be reversed with directions to enter judgment for the defendant in each case notwithstanding the verdict.

So ordered.

*HOLT, Justice* (dissenting).

I dissent. In my opinion the evidence supports the jury's finding that by agreement two items, the scow and the derrick, were not included in the compromise. They were covered by the policies. Respondent's testimony was positive that these items were by agreement withheld from the settlement, and the adjuster for the insurers by his letter of January 14, 1931, in a measure corroborates respondent. Respondent was not aided by any attorney in the settlement, and the drafts and documents evidencing the same were drawn by the insurers.

*OLSEN, Justice* (dissenting).

I agree with Justice Holt.