LAWRENCE L. BRACK, EXECUTOR OF ESTATE OF HANS LARSEN, v. OTTO I. BRACK AND ANOTHER.[1]

December 8, 1944.

No. 33,813.

[1]Reported in 16 N. W. (2d) 557.

504

*Charles H. Weyl,* for appellant.
*Berryman & Dane,* for respondents.

PETERSON, JUSTICE.

Plaintiff, as executor under the last will of Hans Larsen, deceased, brought this action to foreclose a real estate mortgage executed and delivered on November 4, 1926, by defendants to Larsen as security for their note of even date for $1,500 with interest payable three years after date.

The defense was that on March 21, 1933, Larsen and defendants entered into a written contract reciting that there was due on the note the sum of $1,500 and interest at six percent from November 4, 1932, and providing that if defendants paid to Larsen the sum of $45 semiannual interest at six percent per annum on May 4 and November 4, commencing on May 4, 1933, during Larsen's life, the note and mortgage would be null and void upon his death, but that upon default of the interest payments the rights and powers of Larsen under the note and mortgage should be reinstated; and that defendants had performed the contract.

Plaintiff claimed that the contract was void for want of consideration; that defendants breached it by failing to pay interest as stipulated; that, because of such breach by defendants, Larsen's rights and powers under the note and mortgage were automatically reinstated; and that because of defendants' breach of the contract Larsen cancelled the same on December 17, 1942, by giving them notice of cancellation in writing.

At the trial there was no conflict in the evidence as to the execution and delivery of the note and mortgage and the contract relating to the payment of interest during Larsen's lifetime in lieu

of the payments required by the note and mortgage. The validity of the contract was treated as a question of law.

There was a conflict as to whether defendants had performed the contract. The evidence showed that, in addition to the $1,500 note and mortgage here sued upon, Larsen held defendants' unsecured note for $1,000 and a note for $2,500 secured by a real estate mortgage, a total of $5,000 indebtedness, of which $4,000 was secured by the two mortgages mentioned. The $1,000 note was a renewal of a note given by defendants to Larsen's brother and sister-in-law, which he inherited from them. The defendants, who are husband and wife, and Larsen had been very close friends from about 1915 to the time of his death in 1943. For many years prior to February 15, 1941, Larsen lived in St. Paul with Mr. and Mrs. Lawrence L. Brack in their home across the street from that of defendants. He often visited at the home of defendants, where he ate meals and enjoyed their friendship and companionship. Often they went automobile riding together.

At the same time the contract for the payment of the $1,500 note and mortgage was entered into, a similar contract was made by the parties with respect to the $1,000 note. The $2,500 note and mortgage were renewed in October 1942. Perhaps the close friendly relationship may have influenced Larsen, not only to make and renew the loans, but also to enter into the contracts for the payment of the $1,500 note and mortgage and the $1,000 note in the manner mentioned.

Defendants' testimony was to the effect that the interest on the $1,500 note was paid to July 1, 1938, and on the $1,000 note to January 1, 1941; that the amount of interest due from the dates mentioned to that of Larsen's death was $526.66; that they were entitled to credit on the interest in the sum of $734.52, consisting of cash payments of $524.52 and other credits allowed by Larsen in the sum of $210; that the payments and credits were made and allowed during the years 1938 to 1942, inclusive; and that by reason thereof they had paid him $207.86 in excess of the interest due him at the time of his death.

In addition to the payments and credits mentioned, defendants claim that they were entitled to an additional credit on the interest in the sum of $1,312.50 for services rendered to Larsen during a period of 17½ months beginning on February 15, 1941. On that date, Larsen left the Lawrence L. Brack home to live with defendants. Shortly after he went to live with them he became sick and bedridden. At that time he was an old man about 75 years of age. He was crippled, palsied, sick, and had lost to a considerable degree the control of his bowels and bladder. Because of these facts, he required constant attention and nursing, which involved the performance of onerous and disagreeable duties. Defendants rendered such services for the entire period of 17½ months. The trial court found that these services were reasonably worth $75 per month, a total of $1,312.50. Insofar as the finding relates to the value of the services, it stands unchallenged.

Plaintiff's testimony was to the effect that there was $580 back interest due on the three mortgages on July 1, 1938; that, while defendants made certain payments in cash and were entitled to certain credits, the amount was not as they claimed; and that by reason of accrued interest subsequent to July 1, 1938, defendants were delinquent in the payment of interest in the sum of $889.23 at the time the notice of cancellation of the contract was given.

We have carefully examined the evidence and have come to the conclusion that there is no serious dispute as to the fact that defendants were entitled to the credit of $734.52 for the cash payments and the credits, exclusive of the value of the services. Plaintiff's argument to the contrary is based upon a misapprehension of the record.

Plaintiff claims that defendants were entitled to receive only $25 per month for the services rendered in caring for and nursing Larsen. The claim is that he and defendants entered into an agreement when he went to live with them whereby he was to pay them $25 per month for room and board. The proof of this arrangement consisted of testimony that, just before he died, Larsen made a declaration to the effect that he had agreed to pay defendants $25

per month for his room and board and that he made an endorsement on the $1,000 note showing a payment of $300 in full for interest to January 1, 1941, and stated contemporaneously with the making of the endorsement that it was for room and board. Defendants did not expressly deny that the arrangement for room and board had been made. An endorsement on the $1,500 note showed: "Int. paid up to July 1, 1938—135.00." They claimed that they had an understanding with Larsen that he would pay for the services rendered. The trial court adopted their version.

The case was tried upon the theory that defendants were entitled to credit on the interest for payments in cash and for any other credits to which they might be entitled, including the value of the services in question. Plaintiff showed that the credit of $300 was made by Larsen. The trial court found that defendants were entitled to a credit of $1,312.50 to apply on the interest in addition to the $734.52 mentioned. According to the trial court's view, defendants were entitled to a credit of an aggregate of $2,047.02 on the interest. Plaintiff claimed that the aggregate amount of interest on all the loans, including the $580, was $1,898.75, and that the aggregate credits to which defendants were entitled were $1,-180.77, leaving a balance of $717.98, in which amount of interest they were delinquent. In our view of the evidence, it makes no difference whether the amount claimed as interest be as plaintiff or defendants claim. In any event, the credits to which defendants were entitled exceed by $148.27 the highest amount claimed by plaintiff as interest.

The trial court made findings that, by cash payments, credits, and the value of the services which defendants were entitled to have applied on the interest, defendants paid Larsen interest in excess of the amount to which he was entitled; that by reason thereof defendants had fully performed the contract; and that, because of such performance, Larsen's attempted cancellation of the contract for nonpayment of the interest was ineffective. In this court, plaintiff contends, as he did below (1) that the contract for the payment of the note and mortgage is void for want of consider-

ation; (2) that defendants breached the contract; and (3) that Larsen cancelled it for breach of contract by notice in writing.

■ Plaintiff rests the contention that the contract is void for want of consideration upon the ground that the agreement to accept semiannual interest payments during Larsen's life was one to accept less than the amount of the debt already owing to him and past due and that consequently he received nothing for his promise. This is one of those cases where we have a choice of grounds for decision. There is well-reasoned authority to support at least three grounds for holding against plaintiff's contention, *viz.*: (1) An agreement to make payments of interest on a past-due indebtedness during the life of the creditor at a stipulated rate is a sufficient consideration for an agreement to release the debt upon the death of the creditor, for the reason that such an agreement involves a detriment to the debtor and may involve a possible benefit to the creditor (we do not intimate that any advantage to the creditor is necessary in order to have a consideration, see, Johnson v. Kruse, 205 Minn. 237, 285 N. W. 715), Diehl v. McKinnon, 173 Iowa 32, 155 N. W. 259, L. R. A. 1916C, 384; (2) either full or partial performance of an executory contract by one party is a sufficient consideration to support all its provisions and to warrant the enforcement of the unexecuted portions thereof, if any, City of Marshall v. Kalman, 153 Minn. 320, 190 N. W. 597; and (3) no consideration is necessary to support an agreement by a creditor to accept less than the amount due on a liquidated past-due indebtedness in discharge of the whole, Rye v. Phillips, 203 Minn. 567, 282 N. W. 459, 119 A. L. R. 1120.

We decide the instant case upon the last-mentioned ground upon the authority of our decision in Rye v. Phillips, *supra*. In that case we held that the rule requiring a consideration in such cases, which we had prior thereto applied in numerous cases relied on here, is indefensible either on the grounds of logic or good law. We there said (203 Minn. 569, 282 N. W. 460, 119 A. L. R. 1120) that the rule requiring a consideration in such cases was "one of the relics of antique law which should have been discarded long

ago," and we proceeded to label the rule "as a museum piece of the law" and to "shelve it accordingly." We take it as settled that we definitely discarded the rule requiring consideration for a promise to accept less than the whole in discharge of past-due liquidated indebtedness and that we as definitely adopted the rule that no consideration is necessary in such cases. Hence the contract in question is valid without a consideration. We shall not inquire whether there is in fact a consideration where, as here, none is required.

■ The question whether defendants paid the interest due under the contract does not involve any question of their right, as a matter of law, to have credit for the value of their services in discharge of the obligation to pay the interest in cash, because the right to have such credit has been assumed below and here, and because the finding that defendants were entitled to it stands unchallenged. The only question here is whether the value of the services equalled or exceeded any balance that might be due for unpaid interest. That question raises a fact issue, with respect to which the finding of the trial court must be sustained if it finds reasonable support in the evidence. Rebne v. Rebne, 216 Minn. 379, 13 N. W. (2d) 18. Here, as has been pointed out, the evidence was in conflict as to whether defendants had agreed to furnish the services in question as part of the arrangement to furnish Larsen room and board at $25 per month or whether Larsen had agreed to pay for such services. There is a clear distinction between furnishing room and board and sick care and nursing. The former does not comprehend the latter. See, Gregory v. Crain, 290 Ky. 323, 161 S. W. (2d) 49 (involving the question under a zoning ordinance). We think that the trial court's finding that Larsen agreed to pay defendants the reasonable value of their services finds ample support in the evidence.

■ The contract to discharge the note and mortgage by interest payments did not automatically become null and void by reason of defendants' habitual delinquency in making the payments; nor was it terminated by the notice in writing to that effect given by

Larsen to defendants. True, parties to a contract may provide for its annulment or discharge for nonperformance or breach without further action, such as a declaration of forfeiture or notice of rescission. Kirk v. Welch, 212 Minn. 300, 3 N. W. (2d) 426; Associated Cinemas v. World Amusement Co. 201 Minn. 94, 276 N. W. 7. The instant case is different because of the fact that from 1933 to the time of giving the notice of cancellation on December 17, 1942, Larsen accepted from defendants, while they were delinquent in their interest payments, partial payments in cash, gave them credits, and finally accepted the services in question with the right of defendants to have the value thereof applied on unpaid interest. By such conduct, he recognized the contract as being in effect. Continued recognition of a contract as still binding after default of payment provisions is a waiver of the default and the right resulting therefrom, if any, to rescind or to declare a forfeiture on that ground. Mo v. Bettner, 68 Minn. 179, 70 N. W. 1076; Quinn v. Olson, 34 Minn. 422, 26 N. W. 230. The evidence fully supports the view that the parties regarded the contract as being in full force at all times here pertinent. We are not concerned here with the questions whether Larsen had a right to or could abandon or breach the contract by giving notice of cancellation; or whether a contract can be terminated or rescinded after performance by the other parties. The notice did not indicate that he so intended. On the contrary, by its terms the notice indicated an intention to exercise his express contractual right to treat the contract as terminated because of defendants' alleged breach thereof in failing to make the interest payments. The findings of fact to the effect that the payments of interest had been made in the manner mentioned show that there was no basis in fact for terminating or rescinding the contract upon the ground stated in the notice. Absent manifestation of intention to abandon or to commit a breach thereof, termination or rescission of a contract for an alleged but nonexistent default of payment is without effect. See, Mattson v. Greifendorf, 183 Minn. 580, 237 N. W. 588; Nolan v. Greeley, 150

Minn. 441, 185 N. W. 647.   The notice here was ineffective to terminate defendants' rights under the contract.

Affirmed.

