WINTER WOLFF & COMPANY v. CO-OP LEAD & CHEMICAL COMPANY.

111 N. W. (2d) 461.

October 27, 1961—No. 38,134.

*Eustis & Keith,* for appellant.
*Firestone, Fink, Krawetz, Levy & Miley,* for respondent.

KNUTSON, JUSTICE.

This is an appeal by plaintiff from a judgment entered pursuant to an order of the trial court granting summary judgment to defendant.

On or about October 3, 1958, plaintiff sold and agreed to deliver to defendant 135,000 feet of imported copper tubing under the terms of the following contract:

"STATE METALS
DIVISION
WINTER WOLFF & CO.

"76 · BEAVER STREET
NEW YORK 5, N. Y.

"Co-op Lead & Chemical Co.
34 East Fillmore Street
St. Paul 1, Minn.

"Gentlemen: CONTRACT # 784/S

"We herewith confirm having sold to you the following:

"*Material*: Seamless drawn electrolytic copper water tubing, as per ASTM B-88. In coils, soft, 60 feet each.

"*Quantity*: (a) 75,000 feet—3/4″ K
(b) 50,000 feet—1/2″ L
(c) 10,000 feet— 1″ K

"*Price*: (a) $ .2929 per foot
(b) $ .1344 per foot
(c) $ .3700 per foot

*"Delivery*: F. O. B. Piers New York

*"Shipment*: October/November—in 3 monthly shipments of about equal weights, from abroad.

*"Payment*: Net—Cash

*"Packing*: In wooden cases of 500 lbs. net.

*"Markings*: CLC Made in England, size, weights, #1 and up. Coils must be embossed Type K or L—NOT ENGLAND 'ENGLAND': ONLY a cellophane sticker or indelible ink.

*"Remarks*: Please sign the attached green copy of this contract and return it to us.

MINIMUM SHIPMENT: 30,000 pounds gross weight.

> "Very truly yours,
> "STATE METALS
> DIVISION
> WINTER, WOLFF & COMPANY
> Henry W. Fischer

"Accepted ————————————

"THIS CONTRACT SUBJECT TO STRIKES, ACCIDENTS, SHUT-DOWNS, DELAY OF CARRIERS, EMBARGOES AND OTHER CAUSES BEYOND OUR CONTROL

"Date 10/3/58"

After delivering 68,040 feet of tubing, plaintiff was unable to supply more that complied with the contract specifications. If the contract had been performed in full, defendant would have been indebted to plaintiff for the tubing delivered in the amount of $16,654.61. Because of plaintiff's inability to complete the contract, defendant was compelled to procure tubing elsewhere at a price higher than that at which plaintiff had agreed to furnish it. Thereupon, a dispute arose as to the amount of defendant's indebtedness to plaintiff under the contract for partial performance. In order to settle the dispute, defendant wrote plaintiff a letter on February 16, 1959, offering to settle the account for $14,234.81. Defendant enclosed a check in that amount in the letter. On both the front and the back of the check appeared the words: "Payment in full to date." The letter of transmittal reads:

"Feb. 16, 1959

"State Metals
 Div. Winter Wolff & Company
 76 Beaver Street
 New York 5, N. Y.
 "Attn: Mr. Henry W. Fischer
"Gentlemen:
 "We received the following material on your Invoice B-26016:
 23,700 ft. 1/2″ L or 1,300 feet short
 23,000 ft. 1/2″ M or 2,000 feet short
 460 ft. 1/2″ L Copper was damaged
 "We notified you of this on May 23, 1958 and also by phone.
 "We also notified you in regard to Invoice B-27096 on Jan. 30, 1958. In regard to completion of contract 784/S, we wrote you on Jan. 9, 1959 and Jan. 19, 1959.
 "We find, to date, it will involve an additional expense which we failed to understand in our rush to replace the material you so negligently did not supply in time and properly.
 "However, since we want to forget the whole deal, we are mailing you a check for payment to date in full as follows:

 Invoice B-26016..................... .. .. ..........................$ 203.43
 Invoice B-27096 ......... ...... .......... ...................... 16,351.18
 Less 10% on 1″ K ... .. ............. ...... ................... 199.80
 Less per letter of 1/9/59 ..... .. .......... .... . ......... 2,120.00
 ─────────
 $14,234.81
 "Since you well know what we must do to replace the material you failed to ship to us, the above settlement should be satisfactory to you.
 "Very truly yours,
 "Co-op Lead & Chemical Co.
 H. Henderson
"Check # 5551-14234.81 Enclosed."

 Plaintiff accepted and cashed this check and thereafter brought the present action to recover the sum of $2,419.80, representing the difference between what would have been due for the tubing delivered if

the contract had been performed and the amount so paid by defendant. Defendant interposed an answer, alleging that because of plaintiff's breach of the contract it was entitled to an offset in the sum of $2,120[1] due to its damages resulting from a breach of the contract, and denying any liability. Upon these facts, which are undisputed except as to defendant's right to an offset, the trial court granted defendant's motion for summary judgment.

The trial court based its decision on its conclusion that the indebtedness, whatever it was, constituted an unliquidated account as to which there existed a bona fide dispute concerning the amount due. It is conceded by plaintiff that if the court was right in this respect, tender by the debtor of an amount less than the creditor claimed to be due and acceptance of that amount by the creditor would constitute an accord and satisfaction.[2] Plaintiff claims, however, that the court erred in holding that the indebtedness was an unliquidated debt. It contends that as to a liquidated account the above rule has no application and that the creditor's acceptance of a check, even though submitted as payment in full, does not constitute an accord and satisfaction if the account is a liquidated debt.

■ That a dispute existed between the parties as to the amount due on the part of the contract that was performed can hardly be open to question. The contract was an entire one for delivery of a specified amount of goods. Plaintiff performed only part of the contract. If it had fully performed, the amount would have been liquidated. Having breached the contract, the amount due for part performance was open to question. Plaintiff's appeal here is based on the premise that there is a disputed question ot fact as to defendant's right to an offset which should be tried and that consequently defendant was not entitled to summary judgment. It is not based on the premise that plaintiff is en-

---

[1]The discrepancy between the amount representing the difference between the contract price for the tubing furnished and the tender made by defendant and the amount claimed by defendant as an offset is not explained in the record or briefs.

[2]See, Ball v. Thornton, 193 Minn. 469, 258 N. W. 831; 1 Dunnell, Dig. (3 ed.) § 40.

titled to summary judgment because there are no disputed questions of fact. If a dispute exists now as to the amount due, it existed in the same manner when defendant made its tender. If no motion for summary judgment had been made, the issue before the trial court would have been how much defendant owed plaintiff. Involved in that decision would be a determination of whether defendant was entitled to damages for a breach of the contract and, if so, how much. How then can it now be said that no dispute existed at the time defendant made its tender and plaintiff accepted the same? It must be conceded that if a genuine dispute as to the amount due on the account existed the account is unliquidated by any test.

In Oien v. St. Paul City Ry. Co. 198 Minn. 363, 374, 270 N. W. 1, 6, we said:

"Where there is one entire claim as, for instance, the amount of wages earned for services for a specified time, and it is admitted by the creditor and debtor that one of two specific sums is the correct amount, but the parties are in dispute as to which amount is correct, the demand is to be regarded as disputed and unliquidated. The dispute is as to the whole amount. So where the parties disagree as to the amount due from one party to the other, under the contract, the claim is unliquidated and the rule of accord and satisfaction applies."

In Addison Miller, Inc. v. American Central Ins. Co. 189 Minn. 336, 249 N. W. 795, many of the cases of similar import are discussed. We there quote with approval the following language from Nassoiy v. Tomlinson, 148 N. Y. 326, 330, 42 N. E. 715, 716, 51 A. S. R. 695, 697 (189 Minn. 341, 249 N. W. 797):

"A demand is not liquidated, even if it appears that something is due, unless it appears how much is due; and when it is admitted that one of two specific sums is due, but there is a genuine dispute as to which is the proper amount, the demand is regarded as unliquidated, within the meaning of that term as applied to the subject of accord and satisfaction."

In the Addison Miller case we also said (189 Minn. 342, 249 N. W. 798):

"The case is the same as that we shall suppose of a matured promissory note, given by the maker to cover the purchase price of three large items of merchandise. When demand for payment is made, the maker admits liability for a substantial amount but says that as to items one and two he is not liable for the full price because of breach of warranty or some other honest claim. As to item three he says the goods were worthless, and he will not pay anything on account of them. He makes an offer of what he considers the fair value of items one and two, tells the payee that he will not pay more, and that if that offer is accepted the note must be surrendered and the whole thing settled. The payee accepts the offer, gets the money, and surrenders the note. Certainly, thereafter he cannot recover because the settlement intentionally allowed nothing for item three. That is precisely this case in principle."

■ Applying the language of these cases to the facts of this case, the trial court correctly held the account was an unliquidated indebtedness and that acceptance of an offer to settle the account for the amount which defendant claimed it owed was an accord and satisfaction.

■ Even if the claim was liquidated, we have discarded the rule that a separate consideration is necessary in order legally to settle a liquidated debt where the debtor offers less than the full amount and such offer is accepted by the creditor with full knowledge of the terms under which the offer is made. In Rye v. Phillips, 203 Minn. 567, 569, 282 N. W. 459, 460, 119 A. L. R. 1120, 1121, 23 Minn. L. Rev. 223, we said:

"* * * plaintiff's motion for directed verdict [was] granted upon the ground that 'a mere promise of a creditor to receive, and of the debtor to pay, a sum less than the debt in full satisfaction of it, is without consideration, and binds neither party.' * * *

"The doctrine thus invoked is one of the relics of antique law which should have been discarded long ago. It is evidence of the former capacity of lawyers and judges to make the requirement of consideration an overworked shibboleth rather than a logical and just standard of actionability.

"In Oien v. St. Paul City Ry. Co. 198 Minn. 363, 373, 270 N. W. 1, we made such observations concerning it that the bar should have

been advised thereby that we were ready to label the proposition as a museum piece of the law and shelve it accordingly. As Mr. Dunnell suggests, Minn. Dig. (2 ed.) 1932 Supp. § 39, the doctrine may have sprouted from 'a mistake in reporting,' in Pinnel's Case, 3 Co. Rep. Part V, 117a, in 1602. It is characterized as 'an artificial and groundless rule which has been consistently condemned.' * * *

"There is more than one ground of logic and good law upon which this old and indefensible rule may be discarded. There is no reason why a person should be prevented from making an executed gift of incorporeal as well as corporeal property. Why should a receipt in full for the entire debt not be taken in a proper case as sufficient evidence of an executed gift of the unpaid portion of the debt? Again, where there is proof, or on adequate evidence a finding, that a completed legal act, such as a waiver, has set a matter at rest, why is it necessary to search for any consideration?"

Prior to the Rye case, it is true, we followed the rule that payment of a part of a liquidated debt will not discharge the whole even though there is a release of the residue by the creditor. In other words, the mere retention by the creditor of money which he was entitled absolutely to receive was not considered an accord and satisfaction.[3] We see no need of discussing these cases.

It may be true that what we said in Rye v. Phillips, *supra*, was dicta, but if it was, it was the considered opinion of the court that it should control decision in the future. The syllabus, which was written by the author of the opinion, stated (203 Minn. 567, 282 N. W. 459, 119 A. L. R. 1120):

"The rule discarded that a promise of the creditor to accept and of the debtor to pay something less than the sum due on a liquidated debt is not binding for want of consideration, even though the promise is performed and the debtor formally released."

That the language used in the Rye case has been interpreted as an abandonment of our former rule by students and members of the bar alike is evident from what has been written by others.

---

[3]Duluth Chamber of Commerce v. Knowlton, 42 Minn. 229, 44 N. W. 2; Marion v. Heimbach, 62 Minn. 214, 64 N. W. 386.

In 1 Dunnell, Dig. (3 ed.) § 39, we find the following:

"An agreement by a creditor to accept less than the amount due on a liquidated past-due indebtedness in discharge of the whole is binding on the creditor though not supported by any consideration. The former rule under which a consideration was necessary to support such an agreement has been discarded. Under such former rule the part payment of a liquidated claim past due was not a bar to a subsequent action for the balance, though the parties agreed that it should be deemed a full satisfaction. Such an agreement was held invalid because it was without consideration and hence nonenforceable."

In a note covering the Rye case in 23 Minn. L. Rev. 223, 224, we find the following:

"* * * Thus it seems that Minnesota, by the practically-presented dictum in the instant case, is but one of a group of states seeking to do away with a rule founded upon an ancient judicial mistake and kept alive by courts blindly following a rule they have long conceded to be undesirable. Although the court here found it unnecessary to decide this specific issue, there is little doubt that it will follow the rule laid down."

In Annotation, 119 A. L. R. 1123, 1129, the author says:

"The decision in Rye v. Phillips (Minn.) (reported herewith) ante, 1120, partakes both of the character of entire repudiation of the rule, and of the application of its various exceptions. Thus the court, after denouncing the rule as a relic of antiquity which should have been long discarded, held * * *."

Our decisions following the Rye case are equally convincing. In Walgren v. Prudential Ins. Co. 205 Minn. 202, 203, 285 N. W. 525, we said:

"In view of the foregoing, we have no reason for consideration of Rye v. Phillips, 203 Minn. 567, 282 N. W. 459, 119 A. L. R. 1120. Anyway, *the rule there discarded* applied only to an undisputed and liquidated debt." (Italics supplied.)

Brack v. Brack, 218 Minn. 503, 16 N. W. (2d) 557, involved a

claim that an agreement that upon payment of semiannual interest the principal amount of a debt should be canceled under certain conditions lacked consideration. We held that the validity of the agreement could be upheld on three theories, one of which was (218 Minn. 508, 16 N. W. [2d] 560):

"* * * no consideration is necessary to support an agreement by a creditor to accept less than the amount due on a liquidated past-due indebtedness in discharge of the whole, Rye v. Phillips, 203 Minn. 567, 282 N. W. 459, 119 A. L. R. 1120."

We then said:

"We decide the instant case upon the last-mentioned ground upon the authority of our decision in Rye v. Phillips, *supra*. In that case we held that the rule requiring a consideration in such cases, which we had prior thereto applied in numerous cases relied on here, is indefensible either on the grounds of logic or good law."

In Mattfeld v. Nester, 226 Minn. 106, 135, 32 N. W. (2d) 291, 310, 3 A. L. R. (2d) 909, 931, we said:

"* * * In Rye v. Phillips, 203 Minn. 567, 569, 282 N. W. 459, 119 A. L. R. 1120, we overruled and rejected as a 'museum piece of the law' the common-law rule that a new consideration is necessary to sustain a debtor's promise to accept something less than is due upon a liquidated debt in satisfaction thereof, which we already had adopted and followed, for the sole reason that the old rule was not sustained by sound reason."

It may now be argued that we have not applied the rule which we have discussed in these cases in any situation involving a liquidated account. If that is true, the reason in all probability is that we have in each case sought and been able to find some dispute which would justify calling the account an unliquidated one, making it unnecessary for us to apply the untenable rule which we had followed in cases involving liquidated accounts. However, in considering the many statements we have made in which we approve of what was said in the Rye case, there can be no doubt as to what we intended to hold in that case and to follow in the future. To now revert to the rule which we had

followed prior to the Rye case would be a step backward. Where two parties in the position of debtor and creditor, having full knowledge of the facts and dealing fairly with each other, settle an account, even though it may be called a liquidated one, by the offer of one party to pay a definite amount and the acceptance of that offer by the other party, there is no logical or legal reason why they should not be permitted to do so.

■ A creditor's retention of a check offered in full settlement of a liquidated debt by a debtor constitutes an acceptance of an offer to settle the indebtedness.[4]

There is some claim that the case of Cut Price Super Markets v. Kingpin Foods, Inc. 256 Minn. 339, 98 N. W. (2d) 257, is opposed to what we said in Rye v. Phillips, *supra,* and the other cases mentioned above. In the Cut Price Super Markets case other things were involved than the settlement of a liquidated debt. We did recognize the rule of the Rye case even there and said (256 Minn. 357, 98 N. W. [2d] 270):

"* * * a close reading of the Rye case indicates that that case is no more than authority for the principle that an agreement by a creditor to accept less than the amount due on a liquidated, past-due indebtedness in discharge of the whole is binding on the creditor although not supported by any consideration."

If the account in this case were held to be liquidated, the same would be true here. Defendant submitted a check with the full explanation to plaintiff that it was intended as a settlement of the whole account. With full knowledge of the facts, plaintiff accepted this check and should now be precluded from seeking recovery of more. It follows that the trial court was right on either theory.

Affirmed.

OTIS, JUSTICE (dissenting).

This is an appeal by the plaintiff from an order granting defendant summary judgment under Rule 56 of Rules of Civil Procedure.

---

[4]Such is the rule as to an unliquidated indebtedness. See, 6 Williston, Contracts (Rev. ed.) § 1854.

The plaintiff at the times here in question was a supplier of copper water tubing. On October 3, 1958, plaintiff entered an informal contract to sell tubing to defendant, evidenced by a letter from plaintiff to defendant setting out the specifications and unit prices. The agreement contemplated the sale to defendant of 135,000 feet of tubing in various sizes and specified the manner in which the country of origin would be indicated.

By December 29, 1958, plaintiff delivered to defendant a quantity of tubing which defendant concedes would require a payment of $16,351.06 under the terms of the contract except for the offset defendant here asserts. A dispute thereupon arose between the parties occasioned primarily by the fact the tubing was stamped to show it originated in the United Kingdom. Defendant claims this was in violation of the contract and substantially affected the value of the material because of the attitude some labor unions take toward the use of foreign products.

On February 16, 1959, the defendant wrote to the plaintiff registering a complaint and asserting that it had incurred expenses of $2,120 to secure the kind of material which plaintiff should have supplied.[1] With offsetting additional adjustments, the defendant thereupon enclosed a check to plaintiff for $14,234.81 on which was inscribed, "Payment in full to date." Plaintiff retained the proceeds of the check and thereafter brought this action, claiming the sum of $2,419.80 as the unpaid balance. (It is not clear from the record what constitutes the discrepancy between the sum of $2,120 deducted by defendant and $2,419.80 for which the plaintiff sues.) Defendant asserts that plaintiff's action is barred by an accord and satisfaction consisting of defendant's tender of a check in full payment and plaintiff's acceptance of the proceeds.

---

[1]Paragraph IV of defendant's answer alleges in part as follows:

"* * * In order to comply with contracts entered into by defendant with its customers, defendant was forced to and did purchase copper tubing elsewhere other than from plaintiff, and in so doing, defendant expended the sum of Two Thousand One Hundred Twenty ($2,120.00) Dollars more than the same material would have cost the defendant had it been delivered by plaintiff according to the original contract referred to herein."

Except where it has been changed by statute, under the weight of authority payment by a debtor and acceptance by a creditor of less than the full amount of a liquidated claim does not extinguish the balance of the debt because of lack of consideration. It is the general rule, however, that where the debt is unliquidated or there is a bona fide dispute, payment by the debtor of less than the creditor's claim does constitute an accord and satisfaction if tendered in full payment and accepted by the creditor.[2]

As I view the matter, the question for decision is whether or not the payment of a liquidated debt, from which has been deducted the precise amount the debtor claims should be offset, results in an accord and satisfaction if the proceeds of the check are appropriated by the creditor without any further manifestation of mutual consent. Volume 6 of Williston, Contracts (Rev. ed.) § 1854, notes that a few jurisdictions make the creditor's assent a fact question and adds:

"* * * But the great and increasing weight of authority in the United States is to the contrary, and as a matter of law regards the use or retention of the check by the creditor, with knowledge of the condition, as assent to it."

Restatement, Contracts, § 420, is to the same effect. Cases on the subject are annotated at 34 A. L. R. 1035 and 75 A. L. R. 905.[3]

Mr. Justice Mitchell pioneered the doctrine of accord and satisfaction in Minnesota in Duluth Chamber of Commerce v. Knowlton, 42 Minn. 229, 44 N. W. 2. That action involved a guaranty subscription in the sum of $250 pledged by defendants to underwrite the expense of securing a professional employee for the plaintiff Chamber of Commerce. The defendants attempted to satisfy their obligation by the payment of

---

[2]State v. Massachusetts Bonding & Ins. Co. 40 Del. 274, 9 A. (2d) 77. Cases involving the effect of counterclaims on liquidated claims are annotated in 4 A. L. R. 474 and 53 A. L. R. 768.

[3]See, also, Curran v. Bray Wood Heel Co. Inc. 116 Vt. 21, 68 A. (2d) 712, 13 A. L. R. (2d) 728; Grindstaff v. North Richland Hills Corp. No. 2 (Tex. Civ. App.) 343 S. W. (2d) 742; Carlton Credit Corp. v. Atlantic Refining Co. 12 App. Div. (2d) 613, 208 N. Y. S. (2d) 622; Dunbier v. Stanton, 170 Neb. 541, 103 N. W. (2d) 797.

a $50 check marked "in full of our subscription." The plaintiff retained the proceeds and sued for the balance it had assessed. With respect to defendants' claim of an accord and satisfaction, Mr. Justice Mitchell stated (42 Minn. 231, 44 N. W. 3):

"* * * The payment of the smaller sum, without any release by the plaintiff, would not constitute a satisfaction of the residue. It must have been *accepted* as payment in full. The mere retention of the money (to which plaintiff was entitled unconditionally) would not amount to a release, or constitute an accord and satisfaction, although it knew that it was tendered as such."

In a later case, Marion v. Heimbach, 62 Minn. 214, 64 N. W. 386, Mr. Chief Justice Start applied the same rule, but observed that where there is a bona fide dispute, a *mutual agreement* to compromise for a lesser amount than the creditor claims, is sufficient consideration to support an accord and satisfaction.

In determining whether the claim and offset in the case at bar is liquidated or unliquidated, in my opinion we are governed by the decision in Demeules v. Jewel Tea Co. 103 Minn. 150, 114 N. W. 733, 14 L. R. A. (N.S.) 954. There the employee creditor on being discharged was entitled to repayment of a cash bond in the sum of $150 which he had furnished when he was hired. The debtor employer, however, deducted $83.66 which it computed to be the precise amount of its offset. The employee accepted a check for the difference marked: "Return in full of $150.00 cash bond." With respect to the employer's contention that there had been an accord and satisfaction notwithstanding a dispute between the parties, we held the claim was not unliquidated and that the employer suffered no detriment because it paid only what it conceded it owed. We relied on cases previously decided in Minnesota, acknowledging, however, authority to the contrary elsewhere. Although in a later case we held that the receipt and acceptance of a check marked "in payment of contract in full" was an accord and satisfaction, Beck Elec. Const. Co. v. National Contracting Co. 143 Minn. 190, 173 N. W. 413, the facts there involved a true compromise and settlement of an unliquidated claim reached after considerable negotiation.

These cases have been followed or distinguished in other decisions.[4] Addison Miller, Inc. v. American Central Ins. Co. 189 Minn. 336, 249 N. W. 795, was an action, arising out of a fire loss, brought by an insured on five policies which covered fixtures, equipment, tools, supplies, and other goods. The parties could neither agree on the extent of coverage or the quantity and value of the material affected. We said (189 Minn. 341, 249 N. W. 798): "The subject matter fairly bristles with possibilities for disagreement and resulting compromise, * * *." The plaintiff not only accepted drafts marked "in full payment and satisfaction of all claims and demands for loss and damage that occurred on September 19, 1930," but signed full releases, thereafter maintaining the settlement was not a final disposition of all of its claims. The hypothetical set out in the opinion was dictum which contemplated an offer to compromise, an acceptance, and the exchange of a note for the payment of money. The actual decision in the Addison Miller case involves an unliquidated claim and an express release. The abstract statement of law presupposes a mutual agreement of the parties. Our decision in Oien v. St. Paul City Ry. Co. 198 Minn. 363, 270 N. W. 1, did not hold that part payment of a liquidated claim needed no consideration to be binding. The court found that the defendant's continuing to employ plaintiff was sufficient consideration for the payment to plaintiff of less than was due him for wages under their employment contract.

The rule in Minnesota has been precisely spelled out in Dwyer v. Illinois Oil Co. 190 Minn. 616, 252 N. W. 837, decided in 1934. That action involved commissions payable to plaintiff for the sale of defendant's gasoline. The checks periodically paid to plaintiff and negotiated by him were all marked "in full settlement." Plaintiff brought suit to recover additional amounts he asserted were due him. We held that to constitute an accord and satisfaction there must be three elements: (a) The check must be offered in full settlement; (b) it must be an un-

---

[4]C. W. La Moure Co. v. Cuyuna-Mille Lacs Iron Co. 147 Minn. 433, 180 N. W. 540; Thompson Yards, Inc. v. Jastrow, 163 Minn. 329, 203 N. W. 960; Bashaw Bros. Co. v. City Market Co. 187 Minn. 548, 246 N. W. 358; Ball v. Thornton, 193 Minn. 469, 258 N. W. 831.

liquidated claim concerning which a bona fide dispute exists; (c) each party must make some concession to the other. We stated (190 Minn. 621, 252 N. W. 839):

"* * * But where the dispute is over which of two fixed sums represents the debt and the party offering a check in full settlement thereof tenders no more than the smaller amount, which he admits is due, such party has made no concession and there is no consideration for the alleged accord and satisfaction. Thereupon the offeree is at liberty to accept the tendered check even though offered in full satisfaction of the claim."

I believe the case at bar should be governed by the doctrine announced in the Dwyer decision, notwithstanding respondent's earnest contention and the holding of the majority that the Dwyer case was overruled 4 years later by our decision in Rye v. Phillips, 203 Minn. 567, 282 N. W. 459, 119 A. L. R. 1120, decided in 1938. That case has been heralded as ending the need for consideration where a creditor agrees to accept less than the full amount of a liquidated debt. 23 Minn. L. Rev. 223. But I am of the opinion that it did not repudiate the Dwyer rule and is not here applicable. Mr. Justice Stone's remarks on the subject of consideration were dicta, as he so characterized them, since the actual holding was confined to the question of whether parties to a contract could by mutual agreement compromise and settle the debtor's liability on a note by the substitution of a different kind of consideration from that called for in the instrument. We held that we would not concern ourselves with whether the value of the new consideration was as great as that originally required. It is particularly significant that the court was there dealing with a new agreement *expressly* adopted, not only by the original parties, but by a third party as well.

In discussing the absence of consideration Mr. Justice Stone likened the situation to an executed gift or the waiver of a right. However, these doctrines depend on establishing the actual intention of the party involved and include fact questions which cannot be assumed on a motion for summary judgment but must be proved by competent evidence, with an opportunity to rebut such evidence. In Annotation, 119 A. L.

R. 1123, 1129, it was observed that in the Rye case the agreement had sufficient consideration and did not fall within the rule that an agreement to accept less than the full amount of a liquidated claim is not binding. Later cases discussing the Rye decision refer to the new contract as arising out of "a promise"[5] or a "mutual agreement."

Walgren v. Prudential Ins. Co. 205 Minn. 202, 285 N. W. 525, held that plaintiff was barred from recovering on a double indemnity policy because she executed a compromise settlement and gave a full release with respect to a disputed claim. The court found it unnecessary to consider the Rye case. Although Brack v. Brack, 218 Minn. 503, 16 N. W. (2d) 557, relied on Rye v. Phillips for support, the court pointed out there were other grounds for reaching its decision. Mattfeld v. Nester, 226 Minn. 106, 32 N. W. (2d) 291, 3 A. L. R. (2d) 909, had to do with a husband's liability for burying his wife and its reference to the Rye case was unrelated to the question of consideration. Cut Price Super Markets v. Kingpin Foods, Inc. 256 Minn. 339, 98 N. W. (2d) 257, involved a check sent to plaintiff by defendant, with a notation that it was in full payment of all liabilities. In the litigation which arose over the terms of a franchise agreement, the defendant contended that the negotiation of the check constituted an accord and satisfaction. We there observed (256 Minn. 356, 98 N. W. [2d] 269):

"The record fails to disclose that this check was accepted by the plaintiff as an accord and satisfaction. The rule has always been clear that the mere retention by the creditor of money to which he is entitled absolutely will not amount to an accord and satisfaction although tendered or transmitted to him as payment in full of demand. In an accord and satisfaction, it is the *mutual agreement* of the parties to the terms of the compromise and not the dispute which furnishes the consideration for the release. In this case the defendant paid what he admitted to be due and no more. This did not even present a compromise nor can it be an accord and satisfaction." (Italics supplied.)

Although we found that no open dispute existed at the time the check

---

[5]Fidelity State Bank v. Bradley, 227 Minn. 541, 544, 35 N. W. (2d) 748, 750.

was paid, and held there was no accord and satisfaction, we noted that the rule in the Rye case applied only to *agreements* affecting liquidated debts and intimated that it did not abrogate the principles set forth in the Duluth Chamber of Commerce and Marion cases.

We have stated that an accord and satisfaction may occur without an express agreement, but may be implied from circumstances "clearly and unequivocally indicating the intention of the parties." Shema v. Thorpe Bros. 240 Minn. 459, 465, 62 N. W. (2d) 86, 90. The settlement in the Shema case, however, was reached after protracted negotiations and represented a compromise of an unliquidated claim based on fraud.

The respondent takes the position that consideration is supplied in cases of this kind by settling controversies and thereby "avoiding the delay, risk and expense in carrying such disputes to their ultimate legal determination." I am not persuaded by that argument. Where the debtor pays only what he admits would be required of him were the case to be litigated, he has made no concession which could be construed as the kind of compromise and settlement necessary to constitute an accord and satisfaction. Under circumstances such as these there is no logical reason why the creditor should not retain what both parties concede belongs to him, without forfeiting his right to sue for the balance. While he may have the power to do so, a debtor has neither the moral nor legal right to withhold payment of what he acknowledges he owes simply because he may thereby provoke a creditor into accepting less than is due him as the price for avoiding litigation. On the other hand, where the facts permit a finding that the debtor has paid something more than he honestly believes is due and he thereby retains the right to revert to his original position if sued, there have been mutual concessions and a compromise which have all of the elements of an accord and satisfaction.

No case in Minnesota holds that a creditor is barred from recovering the balance of a disputed claim by the mere retention of a partial payment which the debtor admits he owes. All of our decisions which find an accord and satisfaction, or which announce the doctrine by way of dictum, involve express promises, mutual agreements, executed compromises and settlements, or valid releases to which the creditor

was a party. Where the parties negotiate and reach a mutually agreeable compromise, with or without consideration, each having had a voice in considering and framing the terms of the proposed settlement, it should end the controversy. Under such circumstances they should be required to adhere to their position and are bound by an accord and satisfaction. Such a solution is a far cry from a unilateral ultimatum, the effect of which is to impose on one party the will of the other under the veiled threat of withholding all remittances unless there is a prompt acquiescence by the unpaid creditor. In the latter situation there has been no real accord between the parties, let alone a valid satisfaction of the obligation.

I would adhere to our prior decisions and hold that where a liquidated obligation exists and the debtor transmits to the creditor a check marked "payment in full" which reflects a liquidated offset, and the net amount paid represents only the sum which the debtor concedes to be due, the acceptance of the check by the creditor does not constitute an accord and satisfaction in the absence of a mutual agreement based on the express promises of both parties.

For the reasons stated, in my judgment it was error to grant the defendant's motion for summary judgment.

MURPHY, JUSTICE (dissenting).

I concur in the dissenting opinion of Mr. Justice Otis.