## IMPERIAL ELEVATOR COMPANY v. HARTFORD ACCIDENT & INDEMNITY COMPANY.[1]

June 19, 1925.

No. 24,627.

**Distinction between counterclaim and recoupment.**

1. There can be no counterclaim against a counterclaim, so a reply may not assert a counterclaim. To do so would be a departure. But as against a counterclaim, the reply may plead recoupment, i. e., a claim arising out of the same transaction as the counterclaim and going in direct reduction thereof. Such matter is defensive only, as distinguished from counterclaim which is offensive as well as defensive.

**When no accord and satisfaction.**

2. Where a debtor remits to his creditor an amount no larger than is admittedly due, withholding a stated sum to "cover," and larger than, a pending cross demand, there is no accord and satisfaction.

**What constitutes accord and satisfaction.**

3. To constitute an accord and satisfaction, there must be a new contract with the usual essentials, including contractual assent and

[1]Reported in 204 N. W. 531.

valuable consideration. In this case, there was neither, defendant not having been asked to agree to the supposed settlement and plaintiff having suffered no detriment, the amount it paid being confessedly due defendant and the sum retained being more in any event than it was entitled to.

1. See Pleading, 31 Cyc. p. 257; Recoupment, Set-Off and Counterclaim, 34 Cyc. pp. 625, 642.
2. See Accord and Satisfaction, 1 C. J. p. 539, § 40.
3. See Accord and Satisfaction, 1 C. J. pp. 527, § 13, 528, § 14, 539, § 40.

Action in the district court for Hennepin county. The case was tried before Leary, J., who ordered judgment for the balance due plaintiff after deducting its indebtedness to defendant. Plaintiff appealed from an order denying its motion for a new trial. Affirmed.

*H. V. Mercer & Co.* for appellant.

*Lancaster, Simpson, Junell & Dorsey,* for respondent.

STONE, J.

The complaint declares on a grain shortage bond whereon, at the trial, defendant admitted liability for $2,426.13. The issues are those raised by answer and reply. Defendant counterclaimed upon a $2,000 indebtedness for premiums on insurance policies and fidelity bonds, the original amount having been $5,175.53, payment of $3,175.53 on account being admitted. The trial was without a jury and the decision allowed plaintiff a recovery on its admitted cause of action, less the amount of defendant's counterclaim. The appeal is by plaintiff from an order denying its motion for amended findings or a new trial.

The reply admits plaintiff's original debt of $5,175.53, but alleges that on November 15, 1921, defendant owed plaintiff $2,000 on a bond assuring the fidelity of a former employe, one Tretten. That claim, the reply avers, arose out of a loss suffered by plaintiff "through the dishonesty, theft, embezzlement, wrongful abstraction or wilful misapplication of the money and property of the plaintiff" by the employe. By reason of that "situation," the reply further pleads, plaintiff had "set-off" its $2,000 claim against the amount

otherwise confessedly due defendant, "and applied the said sum of $2,000 together with the sum of $3,175.53, in cash, in full payment" to defendant. It is then averred that such "application and payment" had been accepted by defendant and that defendant "is now estopped from denying said set-off and payment to be in full satisfaction" of the original admitted indebtedness of $5,175.53.

The principal issue concerns the attempt by plaintiff, under its reply, to prove accord and satisfaction of the $2,000 counterclaim. Before the consideration of that question, there is to be disposed of another and preliminary one.

1. It is unquestioned that the reply pleads a settlement of the $2,000 claim on the fidelity bond. Counsel for plaintiff now goes farther and maintains not only the sufficiency of his reply for that purpose but also that the merits of the claim were put in issue by the reply and litigated below.

We hold against that contention because, first, the record discloses that the issue was not litigated. If the claim under the fidelity bond, on the merits, had been considered in issue, doubtless there would have been a finding concerning it. But we do not stop there, for at the outset counsel for defendant objected to the introduction of any evidence for the purpose of showing a loss under the liability bond. Admitting that the issue of accord and satisfaction was properly in the case, his point was that the Tretten claim could not be gone into on the merits and independently of the supposed settlement. All of the evidence on the point was taken subject to the objection thus made, the court saying "if they (plaintiff) claimed an accord and satisfaction at that time, that must be its only purpose." The evidence was thus limited in purpose to showing, not the merits of the Tretten claim, but only that the demand had been made by plaintiff and disposed of by accord and satisfaction.

Next, any initial attempt by reply to bring in a cause of action on the Tretten bond (one entirely different from and disassociated with that declared upon by complaint), would be a departure. The only vehicle for bringing in a cause of action against a defendant is the complaint. It cannot be done by reply, even when there is a counterclaim in the answer. There can be no counterclaim against

a counterclaim. Our statute, sections 9253, 9254, G. S. 1923, makes no place for a counterclaim elsewhere than in the answer and requires that it be "an existing one in favor of a defendant and against a plaintiff."

It is an office of the reply to assert defenses against a counterclaim, but it is not therefore permitted to assert a new cause of action against the defendant. Pleas of counterclaim are therefore excluded and only those of recoupment permitted in a reply to a counterclaim. See Cooper v. Simpson, 41 Minn. 46, 42 N. W. 601, 4 L. R. A. 194, 16 Am. St. 667, and Townsend v. Mpls. Cold-Storage & Freezer Co. 46 Minn. 121, 48 N. W. 682. "Set-off and counterclaim are generally used interchangeably" (24 R. C. L. 794), but recoupment is something essentially different, although a given demand may be available both as set-off or counterclaim and recoupment. An obligation to be available for recoupment must arise out of the same contract or transaction as the cause of action, asserted by complaint or counterclaim, to which it is opposed. C. Aultman & Co. v. Torrey, 55 Minn. 492, 57 N. W. 211; 7 Words & Phrases, 6015. It goes in automatic reduction of the opposed cause of action, is purely defensive and therefore permissible in a reply to a counterclaim, whereas a counterclaim to a counterclaim is not. A plea of recoupment is proper, because of its purely defensive character, under section 9257, G. S. 1923, permitting in a reply any new matter constituting "a defense" to a counterclaim. Counterclaim and set-off, strictly speaking, are not defensive, but offensive, a counter attack, and so are not permitted by that section.

We are not dealing here with an attempted equitable set-off. That is an entirely different proposition and governed by the principles referred to in Becker v. Northway, 44 Minn. 61, 46 N. W. 210, 20 Am. St. 543. See other cases cited in annotation of section 9254, G. S. 1923.

Some of the apparent disagreement on this subject is probably due to a confusion of ideas as between what on the one hand is properly counterclaim or set-off and only recoupment on the other. For example in 21 R. C. L. 557, we find this statement: "A counterclaim may be set up in reply to a counterclaim in the answer. But

affirmative relief cannot be granted on a counterclaim in the reply in such a case." The last sentence overlooks the fact that a demand upon which affirmative relief cannot be granted is not a counterclaim. The proposition as stated is put upon the authority of Small v. Kennedy, 137 Ind. 299, 33 N. E. 674, 19 L. R. A. 337. The last cited report of the case is accompanied by a note indicating the view that it creates "a new precedent." The fact is that it does not, although a headnote is to the effect that a counterclaim may be opposed to a counterclaim, under a statute allowing in a reply "any new matter which supports the complaint and avoids the matter" constituting the counterclaim. The decision does not quite support that statement. The demand brought forward by the reply in opposition to the counterclaim grew out of the same transaction, an exchange of lands. The precise holding seems to be expressed in the opinion thus: "We think it was perfectly legitimate for the plaintiff to reply any matter which would defeat the answer and thus leave the cause of action set up in the complaint intact." The court went on in conclusion to say: "The rule is, as we understand it, that a set-off or counterclaim may be utilized, by way of reply, to defeat any affirmative matter set up by way of answer, but such set-off or counterclaim cannot, by way of reply, be made the subject of a substantive claim upon which a judgment may be based." So, without placing the decision squarely upon that ground, it is clear that the demand opposed to the counterclaim by the reply was not a set-off or counterclaim, but a recoupment. It was given that effect and no more.

The rule is stated in 31 Cyc. 257 to the effect that "the reply of a set-off to a set-off is bad as constituting a departure * * * there can be no counterclaim to a counterclaim." Among the few cases cited to the contrary is Small v. Kennedy, which, for the reasons already indicated, we do not think is at all at variance with the view now expressed.

In this case, if the reply could be construed as attempting to plead an original cause of action on the Tretten bond (which does not seem allowable), the attempt would be futile. That is so because, as a new and independent cause of action, its place was in the com-

plaint; to assert it initially by reply would be a departure; and it cannot be used for recoupment, i. e., as a mere defense against the counterclaim, because it does not arise out of the same transaction.

2. The claim of accord and satisfaction arises thus: The claim under the Tretten bond having been made previously plaintiff was billed by defendant for the premiums admittedly due in the sum of $5,175.53. In response and on November 15, 1921, plaintiff sent defendant a "remittance advice." It opened with this: "We enclose herewith check for $3,175.53. Please credit our account as follows:" Then followed a tabulation of the account and a footing at the admittedly correct figure of $5,175.53. That tabulation and footing were followed by this deduction: "To cover pending claims— $2,000." The balance struck was $3,175.53. The advice was signed by plaintiff and accompanied by its check for $3,175.53, bearing on its face, not as a mere appended notation, but as a part of the check itself, this: "In full per our remittance advice 11-15-21." Defendant's unquestioning acceptance and use of the check are now urged as an accord and satisfaction, although pleaded more as an estoppel against an assertion that the transaction was not payment of the premium account.

The Tretten shortage did not reach $2,000. Plaintiff's statement to defendant on October 7, 1921, put it at $1,922.53. Another statement on November 1 reduced it to $1,800 and that is the correct figure. On November 29, 1921, just two weeks after the remittance, plaintiff wrote defendant attaching a statement of the transactions out of which the shortage accrued and saying that they made a "net shortage of $1,800.". There was no accord and satisfaction. The documents themselves do not indicate that the check was tendered upon the *condition* that, if accepted by the payee, it would have to be in settlement. Withholding the $2,000, according to its self characterization, was not to pay or settle the pending claim, but only "to cover" it. Under the circumstances, that phrase must be taken not as the equivalent of "to pay" or "to settle," but rather as synonymous with "to protect." Standing alone, the phrase may be ambiguous, but not so when applied to its subject matter, for there was only the one claim pending, and it was known to be less than

the $2,000 withheld. The retention of that sum must be taken, on the face of the controlling documents, to have been a mere placing of the item in suspense to await final adjustment rather than its discharge by accord and satisfaction.

That view is confirmed by the practical construction put upon the situation by plaintiff itself long *after* the remittance of November 15, 1921. By letter under date of June 28, 1922, defendant's attorneys notified plaintiff that their client had denied liability on the Tretten bond. Plaintiff replied, noting "very carefully indeed" the contents of that letter, but neither then nor thereafter, until this suit was brought, taking position on the supposed settlement of November 15, 1921. On the contrary on August 5, 1922, we find its executive in charge of the matter writing defendant's attorneys "in re * * * Bond * * * A. H. Tretten," again stating the loss at $1,800, promising an accountant's statement "in the course of a few days" bearing on the claim, and expressing the hope that with that statement before it, defendant would "pay our claim promptly." The promised "statement" went forward August 23, 1922, with a letter closing thus: "We believe this will complete your records and we must ask that you O. K. our claim of $1,800 promptly."

Strange language that to use concerning a demand supposed to have been settled some 10 months previously; and an insuperable obstacle to the present argument that it was so settled or that any one then considered that it had been.

3. Going to the law of the problem, it is too often overlooked that there is no discharge by settlement, no accord and satisfaction, without the making of a new contract, one independent of and additional to the source, contractual or otherwise, of the disputed claim or claims. So there must be all the essentials of a contract, including genuine contractual assent and valuable consideration. Here the element of mutual assent is lacking, for clearly the defendant was not asked, by the remittance advice and accompanying check, to assent contractually to plaintiff's withholding the $2,000 *in discharge* of the Tretten claim. The tender of the check was not so conditioned. Therein is the controlling difference between this case

and Beck Elec. Const. Co. v. National Cont. Co. 143 Minn. 190, 173 N. W. 413.

Finally, the $3,175.53 was admittedly due. So there would have been no contract, even though defendant had promised to accept the tender in discharge of all its outstanding demands against plaintiff, for plaintiff would have given no consideration, valuable or otherwise. Thompson Yards, Inc. v. Jastrow, supra, page 329, and cases cited.

There is a helpful discussion of the general question and some of the authorities in 9 Minn. L. R. 458. As there observed, our "problem is to find a consideration," and pertinent here is the accompanying remark (463) that "the consideration must arise from the dispute (concerning a debtor's cross demand against his creditor), and where the full amount of the counterclaim is deducted there seems no possibility of any detriment to the debtor, for, were the dispute decided in his favor, the amount to be deducted would be no greater." Here, the debtor's claim was less than the deduction made to "cover" it.

Order affirmed.