HENRY T. SHEMA AND ANOTHER v. THORPE BROS.[1]

December 11, 1953.

No. 36,081.

*Ryan, Kain & Mikan,* for appellants.

*A. Lyman Beardsley, Robert F. Henson,* and *Morley, Cant, Taylor, Haverstock & Beardsley,* for respondent.

[1]Reported in 62 N. W. (2d) 86.

460

FRANK T. GALLAGHER, JUSTICE.

Appeal from a judgment entered pursuant to an order granting defendant's motion for summary judgment in an action to rescind the sale of certain real estate on the ground of fraud and mistake.

Plaintiffs alleged in their complaint that defendant induced them to sell their property in Edina, Minnesota, for $13,800 by representing to them that defendant desired to purchase the property for roadway and residential purposes in accord with the then character of the neighborhood. They further claimed that in reliance upon such representations they entered into an option contract with defendant, which they subsequently executed. They alleged that at the time the representations were made defendant knew that they were false and knew that the premises were to be used for commercial purposes in that a shopping center was to be built in the neighborhood at a cost of millions of dollars. Plaintiffs claim to have had no knowledge of the proposed shopping center and alleged that defendant was aware of their ignorance in that matter. They claimed that, upon discovery of the fact that a shopping center was to be located in the neighborhood, they rescinded the transaction, tendered the purchase price to defendant, and demanded a reconveyance, which defendant refused.

Defendant in its answer admitted that it purchased plaintiffs' property but denied having made any representations to them and denied that plaintiffs did not know of the proposed commercial development in the neighborhood. Defendant admitted and alleged that after the option contract was executed plaintiffs complained to it that another property owner in the area had received a higher price for adjoining land and that plaintiffs asked for more than $12,300, the agreed consideration for their land including the $500 option payment. Defendant further alleged that, in consideration of plaintiff's request and the immediate performance of the option contract, it offered them an additional $1,500, making a total of $13,800, which offer it claims plaintiffs accepted and performed by delivering a deed of their property to defendant. Defendant also alleged that the additional consideration of $1,500 was paid and

received in full settlement, accord, and satisfaction of any and all of plaintiffs' claims and that plaintiffs failed to state a claim upon which relief could be granted.

In connection with defendant's motion for summary judgment dismissing the action with prejudice and for costs, which motion was granted, the court found that for some years prior to May 8, 1952, plaintiffs intended to sell the premises involved; that they had the property listed for sale with various real estate concerns during that time; that at times, including May 8, 1952, they had a "for sale" sign on the premises, which were zoned for residential purposes; that on May 8, 1952, defendant, through its agent, Harold Schuyler, approached plaintiffs for the purchase of their premises; that plaintiffs informed defendant that they would sell the property for $11,800 if it were to be used for residential purposes but that they wanted considerably more if it were to be used for commercial purposes; that plaintiffs knew nothing about any proposed development for commercial purposes at that time; that defendant's agent, Schuyler, informed them that he thought he had a buyer who would buy it for $11,800; and that he informed plaintiffs that "he had no idea" for what purpose the property was to be used. The court further found that on May 12, 1952, the parties entered into an option contract which provided for a consideration of $500 wherein plaintiffs granted an option to defendant from May 8, 1952, to August 1, 1952, to purchase the premises involved for $12,300 on the following terms and conditions: $500 cash in hand and the balance of $11,800 on or before August 1, 1952, if the option was exercised; in the event the option was not exercised, the $500 was to be forfeited to plaintiffs. The option contained further provisions with reference to conveyance by warranty deed with abstract of title showing marketable title in the event of exercise of the option; notice in writing of intention to take the property, and right of plaintiffs to remain in the premises until February 1, 1953.

The court also found that plaintiffs were advised subsequently that defendant intended to exercise its option; that on June 11, 1952, plaintiffs approached defendant and informed it that neighbors

were selling and receiving $25,000 for their property and that there was to be a big commercial development which would involve plaintiffs' property and that of their neighbors; that on June 12, 1952, plaintiffs joined with defendant in closing the deal at a figure of $1,500 in excess of the amount specified in the option agreement; that this amount was arrived at after negotiations as to what sum plaintiffs should be paid in view of the proposed commercial use of the property; that plaintiffs suggested that they be paid $15,000 but that defendant refused; and that the transaction was closed finally for $13,800, in exchange for which plaintiffs gave defendant a deed to the property. The court also found that by reason of the closing of the transaction aforesaid plaintiffs waived any rights which they had against defendant and that the final payment of the money in exchange for a deed to the premises constituted an accord and satisfaction. It concluded that defendant have judgment for dismissal of the action on its merits with prejudice and for its costs and disbursements. The court set out in its memorandum:

"The court does not attempt in this decision to determine whether there was actionable misrepresentation or not. Plaintiffs learned the facts, then bargained with relation to them, and settled at a figure mutually agreed upon. It seems to me that they are now precluded by well established contract principles of both waiver and accord and satisfaction from pursuing the matter further."

The following questions were raised on appeal:

(1) Did plaintiffs state a claim for relief against defendant on the basis of fraud, concealment, or mistake on which relief can be granted which presents any genuine issue of material fact? (The trial court did not expressly pass on this question.)

(2) Did plaintiffs intentionally and with full knowledge of the facts waive their rights or effect an accord and satisfaction of their rights against defendant so as not to present a genuine issue of material fact?

(3) Could reasonable men under the evidence have reached different conclusions?

In view of the fact that on the record here it appears to us that the decision must be affirmed on the basis of an accord and satisfaction, we deem it unnecessary to pass upon the other legal questions raised by plaintiffs.

A careful examination of the record in its entirety satisfies us that under the facts and circumstances here, as shown by the pleadings, depositions, and affidavits, there is no genuine issue of material fact before us. The trial court was justified in finding that, by reason of the closing of the transaction, plaintiffs waived any rights which they had against defendant when they accepted a check from defendant for the consideration involved in exchange for a deed to the premises and that there was an accord and satisfaction.

In connection with the issue upon which we base our decision, an examination of the record, deposition, and affidavit of Mrs. Shema discloses that between May 12, 1952, and June 10, 1952, four telephone conversations took place between Mrs. Shema and Schuyler. The first conversation was on June 2 when Mrs. Shema called Schuyler and asked him if Thorpe Brothers had purchased the Bove property, as she had heard that they had been offered $25,000 for their property and further that shops were to be built on their side of the street, and Schuyler informed her that he would look into the matter. On June 3 Schuyler telephoned Mrs. Shema and told her that Thorpe Brothers had paid the Boves a small premium for their property and remarked that he did not think that it was fair and felt that Shemas should have more money for their property. He further said that he had already had a four-hour session with reference to the price for their property and that he felt that it was unfair to pay Shemas as little as half as much as the purchase price of the property next door. He then said that he had already procured $1,000 more for them and was trying to get another $500. She then asked Schuyler if they could not at least make it $15,000 and Schuyler replied that it was out of the question. She then told Schuyler that she felt that Thorpe Brothers were not being fair with them and that they had been misled. A third conversation took place on June 9 and at that time Schuyler offered an increase of $1,250

above the amount of the option contract to perform the option at once. Mrs. Shema then asked him if their property was going to be used for commercial purposes, to which she claims Schuyler replied that it was to be used for a road and a sewer and an outlet for a residential housing development. She told him that the option did not have to be executed or performed until August 1, 1952, and that they were going to .wait until then.

The last conversation before the signing of the deed on June 11 took place, according to Mrs. Shema, on June 10, 1952, when Schuyler again telephoned her that Thorpe Brothers were offering them $1,500 more than the option price to perform the option on June 11 instead of waiting until August 1. She again asked Schuyler what the property was to be used for and she claims that he replied that he had no idea. Mrs. Shema responded that she thought they had been misled and that the property was going to be used for commercial purposes and that they were not going to perform when they were misled into signing it in the first place. She said Schuyler then told her that they had no choice about performing the option and that they would either have to give a deed on June 11, 1952, and receive a total price of $13,800 or wait until August 1, 1952, and receive $11,800 plus the $500 option, because they were already bound and had no choice in this regard.

On the day following this last telephone conversation, Mr. and Mrs. Shema went to the Thorpe Brothers office and signed the deed.

Mr. Shema's version of the matter is stated in part in his affidavit as follows:

"That after this date [May 12] and until June 12, 1952, there were many rumors as to the use to which this property would be put. That some of the rumors indicated that this property was going to be used for commercial purposes * * *."

He further testified in his deposition:

"Q. And when you went in there on June 11, 1952, and closed the deal, you understood, did you not, that because of this complaint and in consideration of the completion of the sale at that time, that

they were going to pay you an additional fifteen hundred dollars, did you not?

"A. No, not for that reason. The reason for the fifteen hundred dollars was to move the date up on the option.

\* \* \* \* \*

"Q. What you are saying now is simply because Thorpe Brothers wanted to exercise the option before August 1st, you were willing to execute the deed and convey the property if they paid you an additional fifteen hundred dollars; is that what you are saying?

"A. That's right.

"Q. And that was notwithstanding the fact that you understood that the Boves had received twenty-five thousand dollars for their property and there was to be a big commercial development out there, is that right?

"A. That's right.

"Q. And the first time that Mrs. Shema talked to Mr. Schuyler about this was about May 28th, was it not?

"A. That's about right.

"Q. And you closed the deal on June 11th?

"A. That's right.

"Q. You, of course, understood you were giving a deed to your property?

"A. Giving a deed to the—

"Q. To the property.

"A. To the property?

"Q. You understood that?

"A. I understood that, yes."

An accord and satisfaction is an executed contract. It consists of an agreement of the parties that some new consideration shall be accepted in satisfaction of an existing demand or cause of action and the carrying out of the agreement by a delivery and acceptance of the new consideration. It is obviously not essential in such a contract, any more than with any other contract, that the agreement be expressed; it may be implied from circumstances clearly and unequivocally indicating the intention of the parties. Hinkle v.

M. & St. L. Ry. Co. 31 Minn. 434, 18 N. W. 275; Imperial Elev. Co. v. Hartford Acc. & Ind. Co. 163 Minn. 481, 204 N. W. 531, 42 A. L. R. 559; Hennessy v. St. Paul City Ry. Co. 65 Minn. 13, 67 N. W. 635; 1 Dunnell, Dig. (3 ed.) § 34.

Viewing the evidence in the light most favorable to plaintiffs, against whom the motion was directed, as we must do in this case, it is our opinion under the record here that reasonable persons must agree that for about ten days prior to the execution and delivery of the deed on June 11 plaintiffs had knowledge that their property was to be used in connection with a commercial development and that the Boves who owned the property adjacent to theirs had been offered or had received $25,000 for their property. They must also agree that the Shemas were aware of their alleged claim for fraud as evidenced by Mrs. Shema's statements to Schuyler that defendants had treated them unfairly and that they had been misled. With this knowledge the Shemas were asking for more money. It is also apparent that as a result of the conversations between Mrs. Shema and Schuyler the Shemas accepted an offer of $1,500, which was conditioned upon immediate acceptance. Therefore, we feel that the only reasonable inference to be drawn is that when the parties exchanged the deed for the check, which included the amount of the option agreement plus the new consideration of $1,500, an executed contract of accord and satisfaction was made between the parties.

It is the position of plaintiffs that, since an accord and satisfaction rests upon the principles which govern in the cases of contracts generally, it follows that the effect of fraud and deception is alike in both instances, citing Norris v. Cohen, 223 Minn. 471, 27 N. W. (2d) 277, 171 A. L. R. 178. We cannot agree that the rule of the Norris case has any application to the case under consideration. There an employer-employee relationship existed between the parties, and the one giving a release had absolutely no knowledge of the concealed fact. It was held that under those circumstances a general release did not extend to claims of which one party thereto was wrongfully kept in ignorance and that a wrongful concealment of facts by one party to a release affords sufficient grounds to the

other for setting it aside, particularly where the information concealed is not equally within the knowledge of both parties.

In the case at bar, the fact which has been allegedly misrepresented or concealed is that a commercial development was to be placed on their property. However, both Mr. and Mrs. Shema admitted that they had heard that some type of commercial development was to be built on their property. Further, the only relationship which existed between the Shemas and Schuyler was that of friendship. From their negotiations by telephone it is clear that the parties were dealing at arm's length, and in such a situation a fiduciary relationship cannot be said to exist between the parties. Klemme v. Long, 184 Minn. 97, 237 N. W. 882.

Plaintiffs argue that a tender of the return of the check offered as satisfaction in full within a reasonable time together with unqualified acts showing refusal to accept the remittance as satisfaction will defeat the accord and satisfaction. A careful examination of the record discloses that at no time before the commencement of this action did either Mr. or Mrs. Shema offer to return the check which they had accepted from Thorpe Brothers on June 11, 1952.

Affirmed.