(March 25, 2004)

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JEFFREY T. GLANDA, Appellant. [774 NYS2d 576]—

Mugglin, J. Appeals (1) from a judgment of the Supreme Court (Moynihan, Jr., J.), rendered March 6, 2000 in Essex County, upon a verdict convicting defendant of the crimes of murder in the first degree (two counts), burglary in the first degree, burglary in the second degree and conspiracy in the second degree, and (2) by permission, from an order of said court, entered February 15, 2001 in Essex County, which denied defendant's motion pursuant to CPL 440.10 to vacate the judgment of conviction, without a hearing.

In August 1997, the body of Jeanine Glanda (hereinafter the victim) was discovered in her vehicle at the bottom of Lower Cascade Lake in Essex County. An autopsy determined her death to be a homicide and the subsequent police investigation

led to the arrest of Nicholas Pecararo. During a police interview, Pecararo admitted his involvement in the victim's death, and claimed that he had been hired by defendant, the victim's estranged husband. Defendant was subsequently indicted and, following a jury trial at which Pecararo testified pursuant to a plea bargain, was convicted of two counts of murder in the first degree, burglary in the first degree, burglary in the second degree and conspiracy in the second degree. At the conclusion of the penalty phase regarding the capital offense of murder in the first degree, the jury sentenced defendant to life in prison without the possibility of parole upon each murder conviction, and Supreme Court sentenced defendant to various other concurrent prison terms on the remaining convictions. Defendant's posttrial motion to set aside the verdict pursuant to CPL 330.30 was denied and defendant now appeals from the judgment of conviction and the denial of his pro se motion to vacate the judgment of conviction pursuant to CPL 440.10.

The first issue for resolution is whether the second superceding indictment must be dismissed as jurisdictionally defective because an unauthorized person was present during the presentation of evidence to the grand jury (see People v Di Falco, 44 NY2d 482, 485 [1978]). Defendant contends that since Assistant Attorney General Debra Whitson was not appointed pursuant to Executive Law § 63-d, she was not authorized to attend the grand jury proceedings. The People first assert that this issue is unpreserved for appellate review because it was not raised before Supreme Court and, second, that Whitson was validly appointed (and filed her oath of office) pursuant to County Law § 702.

We begin this analysis by rejecting the lack of preservation issue (see People v Fox, 253 AD2d 192, 194 [1999], lv denied 93 NY2d 1018 [1999]). Turning to the merits, an Assistant District Attorney appointed pursuant to County Law § 702 is expressly statutorily authorized to appear before the grand jury (see County Law § 702 [2]; CPL 1.20 [31], [32]; 190.25 [3] [a]; see also People v Beauvais, 98 AD2d 897, 898 [1983]). Lack of authorization from the Board of Supervisors does not render the appointment invalid where no funding appropriation for the position is necessary (see People v Anderson, 237 AD2d 989, 989-990 [1997]), so the issue distills to whether Whitson's appointment can only be made pursuant to Executive Law § 63-d. We do not so hold.

Executive Law § 63-d was enacted as part of chapter 1 of the Laws of 1995 which, inter alia, amended existing laws to establish procedures for the assignment of counsel and related ser-

vices in criminal actions where the death penalty may be imposed. To this end, the Capital Defender Office was created and Executive Law § 63-d was added to allow District Attorneys to obtain assistance from the Attorney General. The obvious legislative purpose was to insure that District Attorneys were not overmatched by the personnel and resources made available by this legislation to a defendant. Nothing in the statute either mandates that it be used as the exclusive method for a District Attorney to obtain the services of a single Assistant Attorney General nor prohibits the Attorney General from voluntarily permitting one or more of his or her assistants to be appointed as an Assistant District Attorney where, as here, the District Attorney retains ultimate authority and responsibility for the prosecution (*see Matter of Haggerty v Himelein*, 89 NY2d 431 [1997]), even where the prosecution involves a capital case (*see Matter of Colon v Vacco*, 242 AD2d 973 [1997], *lv denied* 91 NY2d 804 [1997]). We conclude that a District Attorney need resort to Executive Law § 63-d only to request the Attorney General to assist when the full panoply of resources available through that office are needed and are not volunteered. Thus, the People's failure to secure Whitson's assistance pursuant to Executive Law § 63-d did not render her appearance before the grand jury unauthorized.

We next consider defendant's convictions for the crime of murder in the first degree. The first count of the indictment alleged that defendant, acting in concert with Pecararo, intended to kill the victim and did kill the victim or procure commission of the killing pursuant to an agreement with Pecararo, by which Pecararo was to be compensated. The relevant statute is Penal Law § 125.27 (1) (a) (vi), which provides that a person is guilty of murder in the first degree when: "With intent to cause the death of another person, he causes the death of such person or of a third person; and . . . the defendant committed the killing or procured commission of the killing pursuant to an agreement with a person other than the intended victim to commit the same for the receipt, or in expectation of the receipt, of anything of pecuniary value from a party to the agreement or from a person other than the intended victim acting at the direction of a party to such agreement."

Defendant argues that, after Pecararo had breached the contract by not breaking the victim's neck, defendant actually caused her death and, since he did not kill her pursuant to a contract which would pay him any consideration, the evidence is legally insufficient to establish first degree contract murder. We reject this argument. Defendant's literal interpretation of

the statute ignores the rule that accomplice liability pursuant to Penal Law article 20, except as limited by Penal Law § 125.27 (1) (a) (vii), applies to all " 'other provision[s] of murder in the first degree' " (*People v Reed ["Ant Live"]*, 265 AD2d 56, 62 [2000], *lv denied* 95 NY2d 832, 838 [2000], quoting Donnino, Practice Commentary, McKinney's Cons Laws of NY, Book 39, Penal Law § 125.27, at 390; *see generally People v Couser*, 258 AD2d 74 [1999], *affd* 94 NY2d 631 [2000]). Hence, "[w]here a person is intentionally killed pursuant to a contract . . . , both parties to the contract, regardless of which one directly caused the death, will be liable" (Donnino, Practice Commentary, McKinney's Cons Laws of NY, Book 39, Penal Law § 125.27, at 391). Here, viewing the evidence in a light most favorable to the prosecution (*see People v Plaisted*, 2 AD3d 906, 907 [2003]; *People v Knapp*, 272 AD2d 637, 639 [2000]), there is ample evidence that defendant and Pecararo jointly planned, prepared for and committed the murder of the victim, and that Pecararo agreed to participate in exchange for $15,000, a new pickup truck and a snowmobile.

Next, in an attempt to reverse this conviction as against the weight of the evidence, defendant has wrongfully viewed the evidence in a light most favorable to him. However, to determine if a verdict is against the weight of the evidence, "we examine the evidence in a neutral light to determine whether a different result would not have been unreasonable" (*People v Cobenais*, 301 AD2d 958, 958 [2003], *lv denied* 99 NY2d 653 [2003]). We conclude, having " 'weigh[ed] the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony' " (*People v Bleakley*, 69 NY2d 490, 495 [1987], quoting *People ex rel. MacCracken v Miller*, 291 NY 55, 62 [1943]), that the jury could conclude that it was Pecararo who actually killed the victim, establishing defendant's guilt as the procurer. Thus, we conclude that defendant was appropriately convicted of murder in the first degree under this count of the indictment.

By reason of the recent decision in *People v Cahill* (2 NY3d 14 [2003]), we reach a different conclusion with respect to defendant's first degree murder conviction pursuant to the second count of the indictment. Here, as in *Cahill*, the aggravating factor elevating the crime of murder in the second degree to murder in the first degree was burglary (*see* Penal Law § 125.27 [1] [a] [vii]). Thus, the intent to commit the murder was the same mens rea used to support the burglary charge, i.e., breaking and entering with intent to commit murder. "If the burglar intends only murder, that intent cannot be used both to define

the burglary and at the same time bootstrap the second degree (intentional) murder to a capital crime" (*People v Cahill, supra* at 65). We, therefore, conclude that the conviction under this count must be reduced to murder in the second degree.

Next, we address defendant's contention that, as a tenant by the entirety, he had a possessory interest in the premises occupied by the victim and, therefore, the trial evidence was legally insufficient to establish an unlawful entry therein (*see* Penal Law § 140.25). For purposes of this statute, a person "enters or remains unlawfully" in or upon premises when he has no license or privilege to so enter or remain (Penal Law § 140.00 [5]).

After acquiring the premises which consisted of acreage, a dwelling and a cottage, defendant and the victim constructed a home for defendant's parents. After defendant and the victim experienced matrimonial difficulties and separated in 1994, the victim took up residence in this recently constructed house. Although divorce proceedings were pending in 1997, the victim had not been awarded sole and exclusive possession of the dwelling in which she resided. Under normal circumstances, tenants by the entirety enjoy the equal right to possession of the property (*see Goldman v Goldman*, 95 NY2d 120, 122 [2000]) and neither would have the right to exclusive possession (*see Nicit v Nicit*, 160 AD2d 1197, 1198 [1990]). Nevertheless, we hold that the existence of this possessory interest by defendant does not preclude his conviction on the burglary counts. Although the Penal Law does not define the terms "license and privilege," a person is licensed or privileged to enter the premises of another when the consent of the owner or possessor has been obtained (*see People v Graves*, 76 NY2d 16, 20 [1990]). In New York, since the purpose of the burglary statute is to protect habitation rights, the security of the occupant is paramount (*see Quinn v People*, 71 NY 561, 570, 573 [1878]). Thus, an owner can properly be convicted of burglarizing premises he owns but which are occupied by another (*see People v Mensah*, 198 AD2d 91, 91 [1993]; *People v Woodson*, 176 AD2d 186, 186 [1991], *lv denied* 79 NY2d 834 [1991]). Moreover, a cotenant's right of possession may be terminated by actual or implied ouster (*see Myers v Bartholomew*, 91 NY2d 630, 633 [1998]). We, therefore, conclude that it was for the jury to determine whether defendant entered the victim's dwelling unlawfully, without license or privilege. Viewing the evidence in the light most favorable to the People, we are convinced that legally sufficient evidence exists upon which the jury could reasonably conclude that defendant had no license or privilege to enter these premises (*see*

*People v Luck*, 294 AD2d 618, 619 [2002], *lv denied* 98 NY2d 699 [2002]). Thus, we conclude that defendant was properly convicted of the crimes of burglary in the first degree and burglary in the second degree.

Next, defendant contends that he was denied his right to be tried by a fair and impartial jury where his for-cause challenge to a prospective juror was denied since she failed to evince "life qualification" for purposes of the penalty phase required upon a conviction for a capital offense. Initially, even if we were to find merit in defendant's argument, such an error does not require reversal of the conviction of a capital offense, but merely requires a new sentencing proceeding (*see People v Cahill, supra* at 73). Nonetheless, in our view, there is no merit to defendant's claim since the views espoused by the potential juror did not "prevent or substantially impair her performance of [her] duties as a juror" (*People v Harris*, 98 NY2d 452, 484 [2002], quoting *Wainwright v Witt*, 469 US 412, 424 [1985]). While the answers of the prospective juror do not unequivocally establish "life qualification," the fact remains that the prospective juror, while generally favoring the death penalty, maintained an ability to remain open minded and would not automatically vote for death in cases such as defendant's. Under these circumstances, we are convinced that the denial of defendant's for-cause challenge does not necessitate a new penalty phase, particularly since defendant's aggregate sentence was life in prison without the possibility of parole.

Defendant's attacks on his convictions based upon the impermissible introduction of evidence regarding his financial circumstances, the failure of Supreme Court to grant a mistrial after striking improper evidence and the instructions to the jury regarding the corroboration of accomplice testimony lack merit. The People offered evidence of defendant's financial condition at the time of the killing on the issue of motive. Since we consider the evidence to be relevant on that issue and as it does not fall within the purview of some exclusionary rule, we find no error in allowing the People to present evidence regarding defendant's lifestyle and precarious financial condition (*see People v Alvino*, 71 NY2d 233, 241 [1987]; *People v Lewis*, 69 NY2d 321, 325 [1987]).

Defendant claims that he was entitled to a mistrial when evidence of the steps taken by the victim's attorney in the divorce proceeding was struck. Although such evidence was stricken approximately two weeks after it was offered, we are unconvinced that Supreme Court abused its discretion in denying defendant's motion for a mistrial, particularly where, as here, the court

gave an appropriate admonishment to the jury and there is no demonstrable showing of prejudice to defendant or deprivation of his right to a fair trial (*see People v Baptiste*, 72 NY2d 356, 360 [1988]).

The charge concerning corroboration of accomplice testimony was clearly adequate. "The corroborative glue does not require independent proof of the elements of the crime to sustain a conviction; it just has to bind the accomplice evidence to the defendant" (*People v Breland*, 83 NY2d 286, 293 [1994]). Moreover, where multiple crimes are involved, "evidence corroborating the accomplice [testimony] on one crime is sufficient to provide the required corroboration on the others" (*People v Spencer*, 272 AD2d 682, 684 [2000], *lv denied* 95 NY2d 858 [2000]). Thus, the jury was correctly charged on the applicable law. Our review of the balance of defendant's contentions—whether raised by counsel or in defendant's pro se submissions—leave us unpersuaded that any has merit.

As a final matter, we are unconvinced that defendant's sentence is either harsh or excessive under the circumstances. First, we note that the sentence of life in prison without the possibility of parole is a legally permissible sentence, and defendant has presented no extraordinary circumstances warranting modification. Notably, the plan to murder the victim evolved over a lengthy period, necessitated the involvement of an accomplice and, under any view of the evidence, was especially heinous and vicious.

Peters, J.P., Spain, Rose and Kane, JJ., concur. Ordered that the judgment is modified, on the law, by reducing defendant's conviction of murder in the first degree under count two of the indictment to murder in the second degree; matter remitted to the Supreme Court for sentencing on said count; and, as so modified, affirmed.