STATE of Minnesota, Appellant,

v.

Paul P. SPENCE, Respondent.

No. A06–1541.

Supreme Court of Minnesota.

July 16, 2009.

Lori Swanson, Attorney General, Kelly O'Neill Moller, Assistant Attorney General, St. Paul, MN; and Robert O'Connor, Jackson County Attorney, Jackson, MN, for appellant.

Lawrence Hammerling, Chief Appellate Public Defender, Benjamin J. Butler, Assistant Public Defender, St. Paul, MN, for respondent.

Elizabeth J. Richards, Minnesota Coalition for Battered Women, St. Paul, MN; Rana SA Fuller, Battered Women's Legal Advocacy Project, Minneapolis, MN; and Loretta Frederick, Battered Women's Justice Project, Minneapolis, MN, for amicus curiae Minnesota Coalition for Battered Women.

OPINION

DIETZEN, Justice.

Respondent Paul P. Spence was convicted of two counts of first-degree burglary under Minn.Stat. § 609.582, subds. 1(a), 1(c) (2008), and one count of gross misdemeanor domestic assault under Minn.Stat. § 609.2242, subd. 2 (2008), for entering a residence occupied by the victim A.S. and assaulting her. The district court imposed the presumptive sentence of 48 months for the first-degree burglary charge under Minn.Stat. § 609.582, subd. 1(c). No sentences were imposed on the other counts.

The court of appeals reversed the burglary convictions but affirmed the domestic assault conviction, holding that because Spence was a co-owner of the residence he could not commit burglary of the building unless a court order had divested him of lawful possession. We granted review of the court of appeals decision reversing the burglary convictions. We reverse.

Spence and A.S. met in 1993 in South Dakota and later moved to Lakeville, Minnesota. They rented a house together, which they ultimately purchased in 1997. Spence and A.S. co-own the house. They had three children together, but they never married. A.S. had two children from a previous relationship.

In 2004, the relationship deteriorated. On April 30, 2004, A.S. obtained an order for protection (OFP) against Spence. Subsequently they separated, and Spence moved out of the house and into an apartment building about a block away. A.S. and the children remained in the house. A.S. did not change the locks to the house. A.S. later asked the court to withdraw the OFP, and the order was dismissed on September 3, 2004.

In November 2004, Spence and A.S. refinanced the mortgage on the house, result-

ing in a reduction of the monthly mortgage payment and equity from the house that they used to pay existing debt. They also discussed the responsibility for future mortgage payments. According to A.S., Spence agreed to be primarily responsible for paying the mortgage, and she agreed to contribute as much as she could to the monthly payments.

On January 13, 2005, after Spence brought one of the children back from a visit, he and A.S. had an argument. Spence told A.S. that he wanted her and the children to get out of the house "or else." In the early morning hours of January 14, A.S. was awakened by a noise in the house. She got out of bed and walked toward the front door. She was grabbed from behind by her hair and shoved to the floor. While her face was pressed hard against the floor, the intruder told her "not to f* *k with him." Although it was dark, A.S. was certain it was Spence because she recognized his voice. The intruder held A.S. down for several minutes, then released her and fled. The toddler son of Spence and A.S., who was awakened by the noise and witnessed the incident, said "my daddy is naughty."

A.S. called the police, who arrived at the scene shortly thereafter. The investigating officer observed a mark on A.S.'s right cheek. A.S. told the officer that Spence had assaulted her. The officer testified that he did not observe any sign of forced entry. Spence later denied any involvement in the incident. He was arrested and charged with two counts of first-degree burglary and one count of domestic assault.

At trial, A.S. testified about her relationship with Spence, the ownership of the house, the incident with Spence on January 13, 2005, and the assault that occurred in the early morning hours of January 14, 2005. She indicated that Spence was the intruder and that she recognized Spence's voice during the assault.

Spence testified that when he and A.S. refinanced the house in November 2004, they agreed to split the mortgage payment in half. When A.S. did not make the December payment, Spence told her that he wanted to remove her name from the title. He agreed that they had an argument on January 13, but explained that it was over his request that A.S. pay her share of the monthly payment. After she refused, he admitted saying "I will see you in court," but denied stating that A.S. needed to move out of the house.

According to Spence, he worked the night of January 13 until 1:30 a.m. and arrived home around 2:00 a.m. on January 14. Spence's neighbor in the apartment building testified that he heard Spence pulling into the driveway at 2:03 a.m. that morning, that he heard Spence opening the door to his apartment, and that it was quiet until 3:00 a.m. when the officer arrived.

At the trial's conclusion, the district court gave the jury the standard instruction for first-degree burglary, which provides, among other things, that an element of first-degree burglary is entering a dwelling "without the consent of the person in lawful possession." 10A Minn. Dist. Judges Ass'n, *Minnesota Practice—Jury Instruction Guides, Criminal,* CRIMJIG 17.01 (5th ed. 2006). During its deliberations, the jury submitted a note to the court asking: "Does a 'house title' owner have the right to enter a dwelling occupied by someone else ( [example] renter) at any time without permission? Lawful Possession." (Emphasis omitted.) Following discussions with trial counsel, the district court responded to the jury: "Yes, unless the joint owner has been divested of the right to lawful possession of the property by an Order for Protection, or by an

agreement made with the joint owner." Spence did not object to this supplemental instruction.

The jury returned guilty verdicts on all three counts, and the district court entered judgment and sentenced Spence to a 48–month sentence of incarceration for one count of first-degree burglary under Minn. Stat. § 609.582, subd. 1(c), which prohibits a person from entering an occupied dwelling, without the consent of the person in lawful possession, and committing an assault. *See* Minn.Stat. § 609.581, subd. 4(a) (2008) (defining "to enter a building without consent" under the burglary statute).

The court of appeals reversed Spence's first-degree burglary conviction and remanded for resentencing on the domestic assault conviction. *State v. Spence,* 742 N.W.2d 203, 206 (Minn.App.2007). It concluded that because Spence was a co-owner of the house, he did not need the consent of A.S. to enter the house and, therefore, could not be convicted of burglary. *Id.* at 205–06. The court explained that Spence had never been dispossessed of his lawful right to enter the house and that a person could not "be charged with burglary of a home in which he had the right of lawful possession, when no court order divested him of that right." *Id.* at 206. We granted the State's petition for review on the reversal of the burglary convictions.

I.

In this case, we are called upon to determine the meaning of the phrase "person in lawful possession" as used in the first-degree burglary statute. The State argues that the court of appeals erred in concluding that Spence could not be convicted of first-degree burglary because he had the right to lawful possession of the house. It contends the district court properly instructed the jury that an owner can

divest himself of lawful possession through an agreement with a co-owner, and the record supports a jury finding that Spence divested himself of lawful possession through an agreement with A.S.

Spence contends that the district court misstated the law when it instructed the jury that an owner could relinquish the right of lawful possession. Spence concedes that he failed to object to the jury instructions before the district court and that the issue of lawful possession was presented for the first time on appeal.

█ Because Spence failed to raise this issue at trial, our review is limited to plain error. *State v. Anderson,* 733 N.W.2d 128, 134 (Minn.2007). Under plain-error analysis, we consider whether there was: (1) error; (2) that is plain; and (3) whether the error affects substantial rights. *State v. Griller,* 583 N.W.2d 736, 740 (Minn.1998) (citing *Johnson v. United States,* 520 U.S. 461, 466–67, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997)).

█ We give district courts considerable latitude in selecting the language of jury instructions, and an instruction is not "erroneous" unless it "materially misstate[s] the law." *State v. Baird,* 654 N.W.2d 105, 113 (Minn.2002). Thus, the threshold question for plain-error analysis in this case is whether the court materially misstated the law when it instructed the jury that an owner can divest himself of lawful possession of real property through an agreement with a co-owner. To answer this question, we begin by construing the term "lawful possession" as used in the burglary statute.

Our goal in statutory interpretation is to effectuate the intent of the legislature. Minn.Stat. § 645.16 (2008). We interpret the words of a statute according to their plain and ordinary meaning. Minn.Stat. § 645.08(1) (2008) ("[W]ords and phrases

are construed according to . . . their common and approved usage."); *Am. Family Ins. Group v. Schroedl,* 616 N.W.2d 273, 277 (Minn.2000) ("[W]e are to construe words and phrases according to their plain and ordinary meaning.").

Minnesota Statutes § 609.582, subd. 1, prohibits a person from "enter[ing] a building without consent and with intent to commit a crime, or enter[ing] a building without consent and commit[ting] a crime while in the building, either directly or as an accomplice." Under Minn.Stat. § 609.581, subd. 4(a), to enter a building without consent means: "to enter a building without the consent of the person in lawful possession." [1]

Generally, "possession" means control of the thing possessed,[2] and "lawful" means permitted, or not forbidden, by the law.[3] The State argues that lawful possession means actual physical control of the building at the time the crime was committed. But the State's definition is broader than the plain language of the statute indicates;

it would encompass trespassers, who maintain possession simply by virtue of physical control but under no claim of right. Moreover, if we read the statute consistent with the State's position, the word "lawful" would be superfluous to the statute, and whenever possible we avoid statutory constructions that render words superfluous. *See, e.g., ILHC of Eagan, LLC v. County of Dakota,* 693 N.W.2d 412, 419 (Minn. 2005).

Spence counters that lawful possession is synonymous with legal ownership. He contends that as a co-owner, he has the legal right to possession of the building and cannot be divested of that right absent a court order or a written agreement with A.S. Spence's definition of "lawful possession" is also too broad.[4] He ignores the plain meaning of possession, which is to exercise control over the building. Consequently, we reject the State's, and Spence's, proposed definitions.

■ We conclude that a person in "lawful possession" under Minn.Stat.

---

1. The crime of burglary has traditionally been recognized as a crime against habitation, not ownership. *See generally State v. Nunn,* 297 N.W.2d 752, 754 (Minn.1980) (noting that burglary of a dwelling should not be deemed a purely property offense, because it carries with it the possibility of violence and risk to personal safety such that it creates a "special danger to human life"); *accord State v. Lemieux,* 726 N.W.2d 783, 789–90 (Minn.2007); *State v. Myers,* 627 N.W.2d 58, 62 (Minn. 2001) (observing that, depending on the facts, burglary can be considered a "person offense" as opposed to a "property offense" for the purpose of calculating sentences under the Minnesota Sentencing Guidelines) (citation omitted).

2. *See, e.g., Black's Law Dictionary* 1201 (8th ed. 2004) ("the fact of having or holding property in one's power; the exercise of dominion over property"); *A Dictionary of Modern Legal Usage* 673 (2d ed. 1995) ("the fact of having or holding property in one's power . . . something that a person owns or controls; property"); *American Heritage Dictionary*

1370 (4th ed. 2006) ("[a]ctual holding or occupancy with or without rightful ownership").

3. *See, e.g., Black's Law Dictionary* 902 (8th ed. 2004) ("[n]ot contrary to law; permitted by law"); *A Dictionary of Modern Legal Usage* 515 (2d ed. 1995) ("established, permitted, or not forbidden by law"); *American Heritage Dictionary* 993 (4th ed. 2006) ("[b]eing within the law; allowed by law").

4. We also reject Spence's reliance on *State v. Simion,* which interprets possession within the context of theft of movable property to include both constructive and actual possession: "Constructive possession 'is usually said to mean the legal right to possession which follows from title without actual possession.'" 745 N.W.2d 830, 841–42 (Minn.2008) (quoting *Baehr v. Penn–O–Tex Oil Corp.,* 258 Minn. 533, 537, 104 N.W.2d 661, 664 (1960)). But the theft statute does not contain the term "lawful possession" and, therefore, is distinguishable from this case. *See* Minn.Stat. § 609.52 (2008).

§ 609.581, subd. 4(a), means a person who has a legal right to exercise control over the building in question. The legal right to exercise control over a building necessarily includes the right to consent to the entry of others into that building. Thus, Minn.Stat. § 609.581, subd. 4(a), requires a determination of whether the defendant received consent to enter the building from a person who had a legal right to give that consent. Ordinarily, this presents a question of fact for the fact finder.

■ In this case, the defendant was a co-owner of the property and the single-family residence. When a defendant charged with burglary has a legally recognizable interest in the building in question, it is necessary to determine whether that interest includes the right of lawful possession under the statute. The district court instructed the jury that a joint owner has a right to enter a residence without consent of the occupant "unless the joint owner has been divested of the right to lawful possession of the property by an Order for Protection, or by an agreement made with the joint owner."

Spence argues that as a co-owner he cannot divest himself of the legal right to exercise control over the property through an implied agreement with A.S. But Spence fails to present any authority to support his argument. Our real property law supports the proposition that a co-owner can agree to divest himself or herself of possessory rights.

First, co-owners may contract with one another in all matters including tenancy. *Schmidt v. Constans*, 82 Minn. 347, 352, 85 N.W. 173, 174–75 (1901); *see also O'Connor v. Delaney*, 53 Minn. 247, 248–49, 54 N.W. 1108, 1108 (1893). "One may lease his moiety to the other," and the parties then assume the rights and obligations of a landlord and tenant. *Schmidt*, 82 Minn. at 352, 85 N.W. at 175.

Second, principles of landlord and tenant law clearly distinguish between possessory interests and ownership interests, and recognize that landlord-owners of real property may surrender their legal right to exercise control over the property to their tenants. *See, e.g., Gallagher v. Moffet*, 233 Minn. 330, 332, 46 N.W.2d 792, 793 (1951) ("An unlawful detainer action merely determines the right to present possession and does not adjudicate the ultimate legal or equitable rights of ownership possessed by the parties."); *Neilan v. Braun*, 354 N.W.2d 856, 859 (Minn.App.1984) ("A valid lease provides the lessee with a right of possession superior to that of the lessor."); *accord* Restatement (First) of Property § 10 cmt. a (1936) (indicating that possessors generally have a narrower range of property rights than owners).

Finally, general principles of contract law allow parties to enter into an agreement by implication. *See, e.g., Webb Bus. Promotions, Inc. v. Am. Elecs. & Entm't*, 617 N.W.2d 67, 75–76 (Minn.2000) (stating that agreements can be implied from "circumstances that clearly and unequivocally indicate the intention of the parties to enter into a contract") (citing *Shema v. Thorpe Bros.*, 240 Minn. 459, 465, 62 N.W.2d 86, 90 (1953)). For example, landlords can divest themselves of lawful possession through an agreement with a tenant that consists of nothing more than permission to occupy the property. *See Gates v. Herberger*, 202 Minn. 610, 612, 279 N.W. 711, 712 (1938) ("Any words that show an intention of the lessor to divest himself of the possession, and confer it upon another, but of course in subordination to his own title, is sufficient [to create a landlord-tenant relationship].") (internal quotation omitted); *accord* 1 Herbert T. Tiffany & Basil Jones, *Tiffany Real Prop.* § 157 (1939) ("[T]enancy may exist merely as a result of the taking of possession of

land by permission, 'permissive possession,' as it may be called, without any understanding as to the duration of the possession.").

Thus, our case law allows a co-owner to divest himself or herself of the right of lawful possession and to agree that the other co-owner maintains that right.[5] We do not read Minn.Stat. § 609.581, subd. 4(a), to limit the right of a co-owner to do so by implied agreement. Whether or not an owner's conduct constitutes an implied agreement to divest himself of lawful possession, and provides that such right remains with the co-owner, is a question for the jury. Accordingly, we conclude that the district court's jury instruction that an owner can divest himself of lawful possession through an agreement with a co-owner did not materially misstate the law and therefore was not error.[6]

## II.

■ Finally, we consider whether the evidence was sufficient to support the jury's guilty verdict on the first-degree burglary charge, and particularly that

Spence divested himself of lawful possession through an agreement with A.S. Though Spence did not raise a sufficiency of the evidence argument with respect to his burglary convictions at the court of appeals, we conclude that the argument was implicitly raised in Spence's framing of the legal issue. Essentially, Spence argued that under these facts he lawfully possessed the property and therefore could not be convicted of burglary.

■■ On review for sufficiency of the evidence, we analyze the record "to determine whether the evidence, when viewed in a light most favorable to the conviction, was sufficient to permit the jurors to reach the verdict which they did." *State v. Webb*, 440 N.W.2d 426, 430 (Minn.1989). We assume that the jury believed the witnesses whose testimony supports the verdict and disbelieved witnesses whose testimony does not support the verdict. *State v. Pendleton*, 706 N.W.2d 500, 512 (Minn. 2005).

It is undisputed that Spence moved out into his own apartment and occupied that

---

**5.** Our conclusion is consistent with other jurisdictions that hold it is not title to property, but the occupancy or possession of property at the time the offense was committed, that determines whether one can be liable for burglary. *See, e.g., People v. Gill*, 159 Cal. App.4th 149, 70 Cal.Rptr.3d 850, 867 (2008) (observing that the possessory right protected by the California burglary statute is the "right to exert control over property to the exclusion of others" and that defendant had surrendered that right by leaving the marital property at his wife's request and surrendering his keys to her); *People v. Hollenbeck*, 944 P.2d 537, 539 (Colo.Ct.App.1996) (holding that if the evidence shows that spouses have decided to live separately, but one spouse maintains residence in the marital property, the other spouse can be convicted of burglary of the marital property even though ownership of the property remains unsettled); *People v. Glanda*, 5 A.D.3d 945, 774 N.Y.S.2d 576, 581 (N.Y.App.Div.2004) (concluding that

defendant could be convicted of burglary for breaking into a residence co-owned with his estranged spouse where defendant had surrendered his possessory interest in the residence); *State v. Schneider*, 36 Wash.App. 237, 673 P.2d 200, 203 (1983) (holding that an owner's entry is "unlawful" if the owner was not "licensed, invited, or otherwise privileged" to enter the property).

**6.** Spence claims that any agreement relinquishing his right to possession must be in writing to be enforceable under the statute of frauds. *See* Minn.Stat. § 513.01(1) (2008) (requiring that any agreements not performable in one year must be in writing in order for an action to lie). But Spence failed to raise this issue in the district court or at the court of appeals, and we decline to consider it for the first time here. *See State v. Allen*, 706 N.W.2d 40, 43 (Minn.2005); *Roby v. State*, 547 N.W.2d 354, 357 (Minn.1996) (declining to hear on appeal issues not raised below).

apartment as his domicile for approximately nine months before the burglary. A.S. testified that she did not think he had a key to the house and that he "shouldn't have had" one. Spence had previously been excluded from the property through an OFP and never re-established possession after the OFP expired. A.S. never gave Spence permission to enter the house after the expiration of the OFP. Finally, Spence's surreptitious entry into the house in the middle of the night suggests he understood he did not have the right to enter the house without the consent of A.S. From these facts, a reasonable jury could determine that Spence had relinquished his legal right to exercise control over the house. We conclude, therefore, that sufficient evidence supports the jury's determination that Spence divested himself of lawful possession of the house.

Accordingly, we reverse the court of appeals and reinstate Spence's conviction for first-degree burglary.

Reversed.

## DISSENT

PAGE, Justice (dissenting).

I respectfully dissent. I do so because, notwithstanding Spence's despicable act of violence against A.S., we should be slow to divest an owner of real property of the right to possess that property. A person who "enters a building without consent" may be convicted of burglary. Minn.Stat. § 609.582, subd. 1 (2008). A person "[e]nters a building without consent" when they "enter a building without the consent of the person in lawful possession." Minn. Stat. § 609.581, subd. 4(a) (2008). As the State has the burden to prove elements of an offense beyond a reasonable doubt, the State must demonstrate that Spence did not have "lawful possession." *See State v.*

*Cannady,* 727 N.W.2d 403, 408 (Minn. 2007).

"Lawful possession" includes not only actual possession but also the right to possess. At common law, tenants in common enjoy unity of possession; possession by one tenant in common "is regarded as possession by all the cotenants, not as a disseisin." *Adams v. Johnson,* 271 Minn. 439, 442, 136 N.W.2d 78, 81 (1965). According to *A Dictionary of Modern Legal Usage,* "*ownership* is a legal status: the aggregate of rights that give a person the fullest power to enjoy, destroy, or dispose of a thing; one of these rights is to possess the thing." 673 (2d ed. 1995). "[E]ach cotenant has at all times the right to enter upon and enjoy every part of the common estate." *Petraborg v. Zontelli,* 217 Minn. 536, 540, 15 N.W.2d 174, 177 (1944). Thus, each co-tenant has a right to possess the common property unless one cotenant has been divested of that right voluntarily, by way of contract or other agreement, or involuntarily, by way of a court order. *See Schmidt v. Constans,* 82 Minn. 347, 352, 85 N.W. 173, 174–75 (1901) (stating that co-tenants can contract with one another in all matters, including tenancy); *State v. Evenson,* 554 N.W.2d 409, 412 (Minn.App. 1996) (an order for protection divests a cotenant of his or her "right to possess"), *rev. denied* (Minn. Oct. 29, 1996).

The court holds that an agreement to divest oneself of the right to possess a jointly-owned building can be implied from the mere fact that one cotenant allows another cotenant to be the sole occupant of the jointly-owned building. That holding, however, is contrary to established law, which provides that possession by one co-tenant is regarded as possession by all cotenants and that all cotenants have the right to enter the property at all times. *See Adams,* 271 Minn. at 442, 136 N.W.2d at 81; *Petraborg* 217 Minn. at 540, 15

N.W.2d at 177. Thus, while I agree with the court that cotenants may voluntarily divest themselves of their right to possess a building by an express or an implied agreement, on the record here, occupancy by itself is insufficient to support a finding that Spence voluntarily divested himself of the right to enter upon and enjoy every part of the house he owned with A.S.

The record in this case indicates that, while Spence did not occupy the building, he was nonetheless an owner of and therefore a cotenant in the property and had the legal right to possess, including the legal right to control and consent to entry into the building. Spence's name was on the mortgage and he made mortgage payments. There is nothing in the record indicating that Spence had been divested, either voluntarily or involuntarily, of his right to possess the property. There was no contract or other agreement between Spence and A.S. divesting him of that right, nor was there a court order in place doing so. Spence, as an owner of and cotenant in the property, had the right to possess and enjoy the property to the full extent of his ownership interest. Because there was no express contract, facts that would support an implied agreement, or court order divesting Spence of that right, I conclude that Spence was a "person in lawful possession" at the time of his entry into the property. Therefore, his burglary conviction must be reversed.

ANDERSON, G. BARRY, Justice (dissenting).

I join in the dissent of Justice Page.